# NOVEMBER, 1933

HENDERSON GRAIN COMPANY ET AL. V. O. P. RUSS ET AL.

No. 6224.   Decided November 1, 1933.

(64 S. W., 2d Series, 347.)

*Bullington, Humphrey & King,* of Waco, *Underwood, Johnson, Dooley & Simpson, Vance Huff,* and *William F. Sutton,* all of Amarillo, *Coke & Coke, Thos. G. Murnane, McCormick, Bromberg, Leftwich & Carrington, Stone & Guleke,* all of Dallas, *Bryan, Stone & Agerton,* and *Brandon Stone,* all of Fort Worth, *Knetsch, Stevenson & Knetsch,* of Seguin, and *Henne & Fuchs,* of New Braunfels, for appellants.

In order to hold venue of this case in Carson County, as to Henderson Grain Company, under subdivision 4 of Article 1995, it was incumbent upon the plaintiffs to plead and prove that the U. S. Strader Grain Company, who answered in this suit without claiming plea of privilege to be sued in the county of its residence, was domiciled in or had a representative or place of business in Carson County *when this suit was filed.* Weir-Martin Implement Co. v. Rice (Civ. App.), 44 S. W. (2d) 1006; Houser v. Harris, (Civ. App.), 44 S. W. (2d) 784; Forsyth v. Pike & Kramer, (Civ. App.), 46 S. W. (2d) 733.

An affidavit controverting a plea of privilege must allege the facts replied upon to sustain venue, and conclusions therein cannot be considered. Chicago Bridge & Iron Co. v. Bailey, 44 S. W. (2d) 452; Lawless v. Tidwell, 24 S. W. (2d) 515; Spencer v. Temple Trust Co., 36 S. W. (2d) 602; Jacobson v. Berwick, 289 S. W., 1035; Meadows & Co. v. Turner, 270 S. W., 899.

Where plaintiffs sought to sustain venue against an out-of-county defendant on the ground that another defendant was a resident in the county of suit, the statutory plea of privilege, timely filed and interposed, of such out-of-county defendant should have been sustained, where the uncontradicted evidence showed that no defendant had a residence in the county of suit at the time the suit was filed or at any time thereafter. Citizens State Bank v. Alexander, 274 S. W., 184.

Where the uncontroverted evidence showed that plaintiffs delivered their wheat to the Strader Grain Company at its elevators in Panhandle and White Deer, in Carson County, Texas, with the knowledge that the capacity of said elevators was insufficient and that the Grain Company was shipping the same out of the county, as fast as delivered to them, and that the plaintiffs did not expect the grain to be kept segregated and to receive the identical grain in return, and that before demanding a return of the grain the plaintiffs asked to be paid therefor, such delivery was a sale and not a bailment and would vest good title in those purchasing from the Grain Company and such purchase would not be a conversion of the wheat in Carson County. Rigby v. Gaines, 6 S. W. (2d) 422; Harrison v. Amador, 9 S. W. (2d) 279; Hudman v. Huelster, 29 S. W. (2d) 454.

Plaintiffs failed to prove any act of trespass in Carson County, but on the contrary its proof showed conclusively that all the acts complained of occurred outside of Carson County. Richardson v. Cage, 113 Texas, 156; Coalson v. Holmes, 111 Texas, 502; Johnson v. Dallas C. & W. W. Co., 120 Texas, 27, 34 S. W. (2d) 845.

Plaintiff failed to prove that its cause of action as to this appellant was joint with its other asserted causes and that this appellant was a necessary party within the meaning of subsection 29a, Article 1995. Fox v. Cone, 118 Texas, 212, 13 S. W. (2d) 66; Greenville G. & F. Co. v. Commerce Finance Co., 117 Texas, 124, 298 S. W., 550.

*Cooper & Lumpkin,* of Amarillo, for appellees.

The various pleas of privilege filed by defendants (appellants herein) were insufficient in law to remove or change the venue of this suit, wherein it was alleged that no exception to the exclusive venue in the county of one's residence provided by law existed, for the reason that plaintiffs specially alleged in their petition that their wheat which was sued for in this cause, or its value, was converted by the defendants in Carson County, Texas, which allegation would, under exception 9 of Article

1995, R. S., 1925, give the plaintiffs the right to maintain this suit in Carson County, and as such allegations are not denied in the various pleas of privilege except by a mere conclusion of law, the trial court committed no error in overruling each of the pleas of privilege. Barnum v. Lancaster Hdw. Co., 40 S. W. (2d) 1103; Yates v. State, 3 S. W. (2d) 114; Humble Pipe Line Co. v. Kincaid, 19 S. W. (2d) 144.

Where persons deposit or store grain in a warehouse or elevator which is mixed and mingled with other grain they become tenants in common to the extent that his or their grain bears to the whole, and where such grain is converted by two or more parties the same would be liable to the owners in proportion to the amount converted. Hence the plaintiffs, being tenants in common, can maintain this suit against the defendants who would be liable to the plaintiffs in proportion to the amount received by each of them. Therefore there was no mis-joinder of parties or causes of action in behalf of the plaintiffs or defendants. Vernon's Civil Statutes, Article 5634; Alexander v. Alexander, 265 S. W., 1072; Winn v. Schramm, 39 S. W. (2d) 645; Climber Motor Corp. v. Fore, 273 S. W., 284; Torgerson v. Quinn-Shepherdson Co., 161 Minn., 380, 201 N. W., 615.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This case is before us on a certified question from the Court of Civil Appeals for the Seventh District at Amarillo. The certificate is as follows:

"The appellees instituted this suit in the District Court of Carson County against the U. S. Strader Grain Company, a Texas Corporation, to recover for the alleged conversion of approximately 106,000 bushels of wheat claimed to be of the value of 72¢ per bushel, and against the several appellants, all domestic corporations, to recover the value of the number of bushels of said wheat claimed to have been converted by each of the appellants.

"The appellees alleged that the U. S. Strader Grain Company had its principal place of business at Miami, in Roberts County, but by its charter was authorized to do business at other places; that during the year 1930 it owned and operated grain elevators at the towns of Panhandle and White Deer in Carson County; that it kept an agent at each of said towns for transacting its business and in connection therewith received wheat for storage as a warehouseman. That Appellees and thirty-five other wheat growers each of whom had assigned his claim to the

appellees, severally delivered to and stored his wheat, giving the number of bushels thereof, with the U. S. Strader Grain Company at its warehouses at Panhandle and White Deer in June and July, 1930, all of which aggregated about 106,000 bushels, and each agreed to pay 1½c a bushel per month storage on his wheat so long as the wheat remained in storage; that the U. S. Strader Grain Company issued separate receipts to the several appellees and their assignors for the amount of wheat that each stored;. that each of appellees and their assignors owned the wheat stored in the proportion that the wheat he stored bore to the whole; that none of them authorized the Strader Grain Company to sell or dispose of the wheat; that each of the appellees and their assignors offered to surrender to the Strader Grain Company his warehouse receipt, pay the storage and receive his proportion of wheat, all of which offers were refused; that each of appellants had a local agent or officer who resided in a county (giving the name thereof) other than Carson upon whom service could be had.

" 'That the U. S. Strader Grain Company and the other defendants herein have converted to their own use and benefit all the above mentioned and described wheat and have deprived the owners thereof of the value thereof.

" 'That in the conversion of said wheat as aforesaid by each and all of the defendants, the defendants, other than the U. S. Strader Grain Company, received only a portion of said converted wheat, the exact amount thereof being known to each and all of said defendants and unknown to the plaintiffs herein and that the conversion of said wheat by the defendants occurred in Carson County and at the towns of Panhandle and White Deer situated in said county and state.'

"The appellees prayed for judgment against the defendants and each of them for the value of the amount of wheat converted by them and each of them, etc.

"The U. S. Strader Grain Company answered to the merits, but each of the other defendants, who are the appellants herein, filed its separate plea of privilege, stating, among other statutory requirements, that no exception to exclusive venue in the county of one's residence provided by law existed as to it. In addition, the Mullen-Brackett Grain Company and Bewley Mills severally stated that each and every allegation made by the appellees to the effect that it converted any wheat in Carson County was made fraudulently for the purpose of unlawfully conferring venue and jurisdiction over it in Carson County.

"In reply to the pleas of privilege filed by the appellants,

the appellees in due time filed their controverting affidavit, stating, in effect, that such pleas of privilege were incorrect and the District Court of Carson County had jurisdiction of the cause and venue of the person of each of appellants for the reasons: (1st.) That the defendant U. S. Strader Grain Company was a Texas corporation, doing business in Carson County, and had agents therein, and was a proper and necessary party to the suit under subdivision 4 of Article 1995 of the Revised Civil Statutes. (2nd.) That appellees' suit was based upon a crime of trespass committed in Carson County under subdivision 9 of Article 1995, because appellees and their assignors deposited with the U. S. Strader Grain Company for storage, wheat in its warehouses and elevators in the towns of Panhandle and White Deer in Carson County, and while the wheat was so stored, said Strader Grain Company took said wheat without the consent of appellees, their assignors or either of them, and sold it to the appellants herein and thereby converted the wheat in Carson County and hence the court of said county had jurisdiction and venue to hear and determine appellees' suit against the appellants. (3rd.) That appellees and their assignors delivered their respective wheat to the U. S. Strader Grain Company for storage either at Panhandle or White Deer in Carson County, Texas, as alleged in their petition, to which reference is here made, and agreed to pay said Grain Company 1½c a bushel per month for storage so long as said wheat was stored; that said Strader Grain Company issued in Carson County to each of the appellees and their assignors its receipts for the grain delivered and that such grain was to be redelivered to said parties on demand and the payment of the storage; that the appellees and their assignors never authorized the U. S. Strader Grain Company to sell or dispose of any of said wheat and that said parties owned the wheat so stored in proportion to the amount deposited and each of them offered to surrender his warehouse receipt, pay the storage and accept wheat. That said U. S. Strader Grain Company and the appellants converted to their own use and benefit all of the above mentioned wheat to appellees' damage in the value thereof, alleged to be 72c per bushel. That by reason of the premises the District Court of Carson County had venue of appellants and jurisdiction to try and determine the issues involved.

"A trial was had on the issues presented by the pleas of privilege and the controverting affidavit; all matters of fact and law were submitted to the court; each of the pleas of

privilege was overruled and each of the defendants, except the U. S. Strader Grain Company, prosecutes a separate appeal.

"The record discloses that each of the appellants was a domestic corporation; that none of them had its principal place of business in Carson County, none of them had an agent, or was doing business in Carson County at the time of the institution of this suit on February 5, 1931; that the U. S. Strader Grain Company had done business and had agents in Carson County, but on November 4, 1930, the elevators of said Strader Grain Company were sold under the foreclosure of a deed of trust lien against said elevators. That it was authorized to do business in Roberts County and other places and the several appellees and their assignors had delivered wheat to the elevators of the U. S. Strader Grain Company either at Panhandle or White Deer in Carson County, for which the Company had issued to the depositors formal receipts or scale tickets. That said Company's elevator in Panhandle had a capacity not to exceed 20,000 bushels and the one at White Deer had a capacity not to exceed 9,000 bushels and at the time of the institution of this suit no grain was held in either of said elevators. That said Company daily shipped the wheat, loading it into railroad cars at the respective elevators, and during the season of 1930 shipped 136 cars which contained in the aggregate approximately 206,000 bushels of wheat; that said wheat was unloaded from trucks into the dump pits and carried through the elevating machinery into the railroad cars; that said Grain Company handled at Panhandle and White Deer during the season of 1930 something like four times as much wheat as is involved in this litigation. That 136 bills of lading were introduced in evidence covering the cars of wheat in controversy which were shipped by the U. S. Strader Grain Company from Panhandle and White Deer to the order of said Company at Amarillo, where the grain was inspected. That a part of the appellants purchased said cars of wheat from the U. S. Strader Grain Company and others purchased the wheat they acquired from the appellants to whom said Grain Company had previously sold certain cars of wheat. That the negotiations for the sale of wheat were by letters, telegrams and long distance telephone calls to the place of business of the appellants to whom said U. S. Strader Grain Company sold. That by such negotiations the Strader Grain Company sold separately certain particular cars of wheat to the appellants who purchased from it and in no instance did the appellants jointly purchase any of the wheat. That the U. S. Strader Grain Company would have

issued at Amarillo diversion orders, diverting said cars of wheat from Amarillo to the respective places of delivery indicated by the appellants in their separate purchase contracts. That none of the appellants knew of or had notice that the U. S. Strader Grain Company did not own the wheat and each purchased the grain sold to it without knowledge of any defect in the title of the U. S. Strader Grain Company and paid an adequate consideration therefor.

"This Court is unable to agree on the law arising upon the issues presented in this Certificate, and we therefore certify to Your Honors the following question:

"Did the Trial Court commit error in overruling appellants' pleas of privilege?"

The record accompanies the certificate and we look to both in answering the questions certified. At this point we deem it expedient to reproduce the controverting affidavit in full. It is as follows:

"Now come the plaintiffs in the above numbered and entitled cause and controvert the pleas of privilege filed by the defendants herein and each of them, and say that they have good reason to believe and do believe, and so allege, that the pleas of the defendants and each of them who filed pleas of privilege herein are incorrect and that this court has venue of this cause and of the person of each of the defendants filing said pleas of privilege, for the following reasons, to-wit:

"That the defendant, U. S. Strader Grain Company, is a corporation incorporated under the laws of the State of Texas, and had a place of business in Carson County, Texas, during the months of June, July and August of the year 1930, and is a proper and necessary party to this suit, and that under subdivision IV of Article 1995 of the revised statutes each and all of the defendants who filed pleas of privilege herein are sueable in Carson County, Texas, where the defendant, U. S. Strader Grain Company, had its place of business, as aforesaid.

"Plaintiffs would show to the court that this is a suit based upon a trespass or crime committed in Carson County, Texas, and under subdivision IX of Article 1995 of the revised civil statutes this court has venue to hear and determine said cause, in that plaintiffs and their assignors deposited with the defendant, U. S. Strader Grain Company, for storage wheat in the warehouse or elevator of the defendant, U. S. Strader Grain Company, in the towns of Panhandle and White Deer in Carson County, Texas; that while said wheat was in storage the defendant, U. S. Strader Grain Company, took the same with-

out the consent of plaintiffs or their assignor, and sold the same, either direct to the defendants who have filed pleas of privilege herein or sold the same through some agent, broker or grain company, to said defendants, and that by reason thereof the defendants filing pleas of privilege and the defendant, U. S. Strader, converted the property belonging to plaintiffs and their assignors, and that said conversion of plaintiffs' wheat, or the wheat belonging to their assignors, was taken in Carson County, Texas, and that by reason thereof this court had venue to hear and determine this cause.

"That plaintiffs and their assignors delivered to the defendant, U. S. Strader Grain Company, at either Panhandle or White Deer in Carson County, Texas, the grain mentioned and described in their petition, to which reference is here made, for storage in its warehouses and elevators in the town of White Deer and the town of Panhandle, in Carson County, Texas, and agreed to pay to the defendant, U. S. Strader Grain Company, the sum of $0.01½ per bushel per month so long as said wheat or grain remained in storage at the elevator or warehouse of the defendant.

"That in Carson County, Texas, the U. S. Strader Grain Company issued to the plaintiffs and their assignors receipts for all grain and wheat that was delivered to them for storage, and that said wheat and grain was to be delivered to said parties and each of them upon demand and upon the payment of said storage due by them and each of them.

"That plaintiffs and their assignors, who are the parties who stored wheat and grain as aforesaid with the defendant, U. S. Strader Grain Company, in Carson County, never authorized the defendant, U. S. Strader Grain Company to sell or convert their wheat and grain at any time, and that said parties owned said wheat which was deposited by them in proportion to the amount so deposited, and each and all of them have offered to surrender the warehouse receipts issued to them to pay the amount of storage due, and demanded the wheat so deposited, but to no avail, as the defendant, U. S. Strader Grain Company, and the defendants filing pleas of privilege have converted to their own use and benefit all of the above mentioned and described wheat, to their damages in the value of said wheat, and that at the time said wheat was so converted the same was of the reasonable value of $0.72 per bushel.

"That by reason of the premises and under subdivisions IV and IX of Article 1995 of the revised statutes this court has venue to try and determine the issues involved.

"WHEREFORE, plaintiffs pray the court to set a date to hear and determine the pleas of privilege filed herein; that defendants be served with a copy of this plaintiffs' controverting affidavit, as required by law, and that upon hearing hereof said pleas of privilege and each of them be overruled, and for costs in this behalf."

### FURTHER STATEMENT.

For the purposes of this opinion we will treat this case as though appellees and their assignors delivered wheat to the Strader Grain Company in Carson County, Texas, for storage, but we are unable to conclude that it was understood between the parties that such wheat was to be kept stored in a common mass, or stored in Carson County or that such was done. In this connection the undisputed evidence shows that the appellees and their assignors, each acting individually for himself alone, in an absolutely disconnected transaction, delivered wheat to the Strader Grain Company, a corporation. The several lots of wheat were delivered in Carson County where the Strader Grain Company had two small elevators, but a great deal more wheat was delivered than they would hold, and these appellees and their assignors knew that the Strader Grain Company was shipping this wheat out of Carson County practically as fast as it went into its elevators. In this connection it was shown that large quantities of wheat delivered to Strader Grain Company never even went into the elevators, but was loaded direct in the freight cars when it was delivered. Also the undisputed record shows that several times as much wheat was delivered to Strader Grain Company in Carson County under the same circumstances as this by other parties as was delivered by appellees and their assignors. The wheat delivered to Strader Grain Company was not intended to be kept separate so that each person's wheat could be identified but all wheat delivered to such company, whether by appellees and their assignors or other parties, was handled in the above manner.

It was not the intent of the contract between the storer and the Strader Grain Company that the storer would get back the very wheat stored. In fact we are inclined to the view that the testimony taken as a whole leads to the inevitable conclusion that it was the intent of the parties that the Strader Grain Company would pay for the wheat stored in cash when demanded. For the purposes of this opinion, however, we will treat the case as though the obligation allowed the storer to demand wheat of an equal grade and amount as the wheat stored.

The evidence further shows that the Strader Grain Company shipped all wheat received by it in Carson County, including this wheat, and the wheat delivered by other parties, by many separate and individual railroad shipments to points outside Carson County in the manner and under the circumstances above shown, with the knowledge of appellees and their assignors. After this wheat had been shipped out of Carson County under such circumstances a part of it was sold by absolutely disconnected and independent transactions to the several appellants in this suit. In making these several purchases each appellant acted for itself alone, and no part of the transactions with such appellants or any one of them occurred in Carson County. All of these appellants acted in good faith and without any notice of the claims of appellees. Finally there is no showing that this wheat ever became a part of a common mass outside Carson County. In fact the contrary appears.

### OPINION.

At the beginning of this opinion we note that appellees seem to contend that their rights are governed, at least in part, by Article 5634, R. C. S., this statute reads as follows:

Art. 5634. "If authorized by agreement or by custom, a warehouseman may mingle fungible goods with other goods of the same kind and grade. In such case the various depositors of the mingled goods shall own the entire mass in common and each depositor shall be entitled to such portion thereof as the amount deposited by him bears to the whole."

■ We cannot agree that these appellees have any rights in so far as these appellants are concerned under the above statute. This is true because the wheat here involved is not shown to have been stored, or intended to be stored, in a common mass, nor did these appellants buy from a common mass. This is evident from the statements made by us and contained in the certificate.

■■ We think a reading of the above affidavit discloses that it nowhere makes the petition a part of the affidavit. Under our statute an affidavit controverting a plea of privilege is a sworn pleading. Since this affidavit fails to make the petition a part of the same it must be tested by its own allegations unaided by the petition. Spencer v. Temple Trust Co. (Civ. App.), 36 S. W. (2d) 603; Spencer v. Presbyterian Board, etc. (Civ. App.), 36 S. W. (2d) 607. When we come to examine the affidavit alone it is obvious that it utterly fails to allege a cause

of action against appellants or any of them in Carson County. Article 2007, R. C. S.; Duffy v. Cole Pet. Co. et al., 117 Texas, 387, 5 S. W. (2d) 495. In fact, taken alone, the affidavit fails to allege a cause of action against any of these appellants in any county. It is true that the affidavit states that reference is made to the petition, but we de not think that this statement is sufficient for any court to say that the party who swore to it made the petition a part thereof and thereby swore to the entire petition.

We are further of the opinion that even should we concede that the controverting affidavit is sufficient to make the petition a part thereof, still the facts utterly fail to show jurisdiction over the persons of these appellants or any of them in Carson County, Texas. We shall now proceed to demonstrate the correctness of this conclusion.

We think a reading of the controverting affidavit above quoted shows that by its express language it only attempts to predicate venue under subdivisions 4 and 9, supra. In this connection we call attention to the fact that the affidavit, after making all the other allegations therein contained, and just before the prayer, contains the following statement:

"That by reason of the premises and under subdivisions IV and IX of Article 1995 of the Revised Statutes this court has venue to try and determine the issues involved."

Notwithstanding the above allegation in the controverting affidavit as presented in the trial court, appellees now contend by their briefs, and oral and written arguments that venue lies in Carson County, Texas, over appellants under subdivisions 4, 9, 23 and 29a, of Article 1995, supra. We shall discuss such issues as applied to all the above mentioned subdivisions. Before doing so we deem it expedient to quote the pertinent portions of Article 1995, R. C. S. They are as follows:

Art. 1995. "No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:

* * * *

"4. Defendants in different counties.—If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * *

* * * *

"9. Crime or trespass.—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile.

* * * *

"23. Corporations and associations.—Suits against a private corporation, association or joint stock company may be brought in any county in which the cause of action, or a part thereof, arose, or in which such corporation, association or company has an agency or representatives or in which its principal office is situated. Suits against a railroad corporation, or against any assignee, trustee or receiver operating its railway, may also be brought in any county through or into which the railroad of such corporation extends or is operated. Suits against receivers of persons and corporations may also be brought as otherwise provided by law.

* * * *

"29a. Two or more defendants.—Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto."

■ A reading of subdivision 4, supra, discloses that it only operates to confer jurisdiction over a non-resident defendant in cases where there is a resident defendant. Behrens Drug Co. v. Hamilton & McCarty, 92 Texas, 284, 48 S. W., 5. It is undisputed that not a single defendant in this suit, not even the Strader Grain Company, resided in Carson County at the time this suit was filed or at any time thereafter. It is therefore evident that venue over these appellants, all non-residents, cannot be sustained under subdivision 4.

Subdivision 9, supra, provides that a suit based upon a crime, offense or trespass may be brought in the county where such crime, offense or trespass was committed or in the county where the defendant has his domicile. As we have demonstrated by the statement we have made and as shown by the statement made in the certificate, none of these appellants have committed a crime, offense or trespass in Carson County. It follows that venue cannot be sustained as to them in such county.

It seems to be contended by appellants that the Strader Grain Company was guilty of converting their wheat in Carson County so as to give venue under subdivision 9, supra, in an action against it for such conversion in that county, and that by reason of that fact they have venue as to any other non-resident defendant who purchased such wheat outside such county. We cannot agree to this contention. To our minds

under this subdivision alone a non-resident defendant cannot be sued outside the county of his residence unless he has participated in the crime, offense of trespass in the county where the suit is filed.

Appellees contend that they have venue as to all of these appellants in Carson County, Texas, under subdivision 9, under the following authorities: Winn v. Schramm, 39 S. W. (2d) 645; Farmers National Bank v. Dublin National Bank, 55, S. W. (2d) 567; R. F. Finance Corp. v. Jones, 50 S. W. (2d) 475; Bowers v. Bryant-Link Co., 15 S. W. (2d) 598; American Mortgage Co. v. Smith, 35 S. W. (2d) 1092; Rose Mfg. Co. v. Coppard, 255 S. W., 993. We think none of these authorities sustain appellees' contention. In some of them the suit was brought in the county of the residence of a co-defendant; while in others it was brought against the defendant committing the crime, offense or trespass in the county where same occurred.

The Bowers case, supra, is by this section of the Commission, speaking through Judge Harvey, and simply holds:

"The trespass, as regards a portion of the converted cotton, is shown to have been committed in Dickens County. Hence suit against both trespassers, in respect of such trespass, was properly brought there. R. S., art 1995, subd. 9; Willis v. Hudson, 72 Texas, 598, 10 S. W., 713; Perry v. Stephens, 77 Texas, 246, 13 S. W., 984. And, too, venue in the suit against the trespassers, Bowers and Collins, for the conversion of all the cotton converted by them, lies in Dickens County, where some of the cotton was converted. All the acts of conversion were committed in pursuance of a general plan concerted by them; which plan comprehended the conversion of all the rent cotton raised by Collins. For this reason, if for no other, suit against them for the conversion of all may be brought in any county where any of the particular trespasses committed in pursuance of the general plan occurred. In this respect, no essential distinction is perceived between a conspiracy to commit crime, as in Raleigh & Heidenheimer Bros. v. Cook, 60 Texas, 438, and a common design to commit trespass."

As shown by the statement we have made none of these appellants committed any act of conversion in Carson County so as to bring them under subdivision 9. Also as already shown, there is no defendant in this case who resides in Carson County. In this connection we are aware of the fact that it is the settled law of this State that in cases where there is a resident defendant a non-resident defendant may be joined if he is either a proper or a necessary party, but we are aware

of no authority for holding that under the provisions of subdivision 9 alone, where a non-resident defendant wrongfully converts property in a given county and sells it to another non-resident defendant in another county who had nothing to do with the wrongful conversion in the first instance, that the second non-resident defendant can be sued in the county where the first non-resident defendant converted the property.

■ Finally we are of the opinion that the statement we have made does not establish a conversion of the wheat here involved in Carson County even as against the Strader Grain Company. This is evident because while the wheat was delivered to the Strader Grain Company in Carson County, the uncontroverted evidence shows that such company had very limited facilities for storage in such county and that the wheat was shipped out of Carson County as fast as it was received. All this was known and impliedly consented to by appellees and their assignors at the time the wheat was stored.

■ We think the contention of venue in Carson County over these appellants under subdivision 23, supra, has practically been disposed of under the foregoing discussion. It is evident from the statement we have made that none of these appellants have participated in any transaction here involved in Carson County, and none of them have any agent, representative or office of any character therein.

■ Before discussing this case as applied to 29a, supra, we deem it proper to first discuss and construe that statute. A reading of it will disclose that it is rather far reaching in its scope and effect. The several courts of civil appeals have greatly conflicted as to its meaning, and at least one such court has construed it to repeal subdivision 4. Any attempt to discuss these opinions would extend this opinion too far. We shall therefore content ourselves with a general discussion and interpretation of its meaning and effect.

As already shown the effect of subdivision 4 is to fix venue by reason of the residence of a defendant and this subdivision has nothing to do with cases where the venue is fixed by reason of the nature or character of the suit as provided for in many other subdivisions of Article 1995. Even under subdivision 4, in order to maintain venue over a non-resident defendant there must be, as to the resident defendant, a bona fide cause of action. Richardson v. Cage Co., 113 Texas, 152, 252 S. W., 747. In other words the non-resident defendant must be either a proper or necessary party. In such an action venue

can be maintained on a non-resident defendant solely on the ground of the residence of the co-defendant.

An examination of the various subdivisions of Article 1995, supra, discloses that there are many causes of action arising where there is more than one *necessary* party, and many of these causes of action may be maintained under some other subdivision of the above article than subdivision 4, as against one or more defendants outside the county of their residences. In such cases venue is determined by the character of the cause of action, and is fixed by some subdivision of Article 1995, other than subdivision 4. If such a suit is brought against a defendant outside the county of his residence it is maintainable there under the appropriate subdivision covering that particular character of cause of action. Prior to the enactment of subdivision 29a there were many cases where the law made no provision by which another defendant, although a *necessary* party, could be brought into the suit if it was filed outside the county of his residence, or the residence of a co-defendant. This makes it clear to us that the purpose and intent of 29a is to remedy this condition so as to provide that in a case where a defendant is sued outside the county of his residence, and venue as to him is fixed by some other subdivision of the statute than 4, any other non-resident necessary party defendant can be brought into the suit. To illustrate: A resides in Carson County and B in Galveston County. In a proper action C sues A in Carson County. Under subdivision 4, C can join B as a defendant to the suit in Carson County if he is either a proper or necessary party. On the other hand, suppose suit is brought by C against A, a non-resident, in Carson County under some subdivision of Article 1995, other than 4, then if B, also a non-resident, is a *necessary* party to the suit, as distinguished from merely a proper party, he can be joined in the case in Carson County under Subdivision 29a. In such a case the suit can be maintained in Carson County as against both A and B, although neither resides therein. When 29a is given this construction, it merely operates to add another exception to Article 1995 and leaves 4 unrepealed and wholly unamended.

It will be noted that 29a carefully confines its provisions to *necessary* parties. An examination of the caption of the act discloses that it also confines the exception to *necessary* parties.

Clearly these appellants cannot be said to be necessary parties to this suit. Boydston v. Morris, 71 Texas, 697, 10 S. W., 331. In fact it is evident from the statement we have made that appellants are not even properly joined with each other in

this action. At least in this regard they are not even proper parties. Sun Oil Co. v. Robischeaux (Com. App.), 23 S. W. (2d) 713, and authorities there cited. We quote the following from the opinion in that case:

"The rule is well established in this state, and supported by almost universal authority, that an action at law for damages for tort cannot be maintained against several defendants jointly, when each acted independently of the others and there was no concert or unity of design between them. In such a case the tort of each defendant is several when committed, and it does not become joint because afterwards its consequences, united with the consequences of several other torts committed by other persons in producing damages. Under such circumstances, each tort-feasor is liable only for the part of the injury or damages caused by his own wrong; that is, where a person contributes to an injury along with others, he must respond in damages, but if he acts independently, and not in concert of action with other persons in causing such injury, he is liable only for the damages which directly and proximately result from his own act, and the fact that it may be difficult to define the damages caused by the wrongful act of each person who independently contributed to the final result does not affect the rule. Sun Co. v. Wyatt, 48 Texas Civ. App., 349, 107 S. W., 934; 38 Cyc., 484; 26 R. C. L., 766." * * *

We hold that the several pleas of privilege filed herein by appellants should have been sustained, and recommend that the question certified be so answered.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

C. M. CURETON, Chief Justice.