## CITIZENS NAT. BANK v. CITIZENS STATE BANK et al.

### No. 4901.

Court of Civil Appeals of Texas. Amarillo.

May 9, 1938.

E. L. Klett, of Lubbock, for appellant.

Howard F. Saunders and Sanders & Scott, all of Amarillo, for appellees.

STOKES, Justice.

This is an appeal from an adverse ruling of the trial court upon a plea of privilege filed by appellant, the Citizens National Bank of Lubbock, which we shall designate as the Lubbock Bank. The suit was filed in the district court of Wheeler County on the 23rd of March, 1935, by the Citizens State Bank of

Wheeler, which we shall designate as the Wheeler Bank, against the Lubbock Bank and T. F. West Grain Company, a corporation, domiciled at Lubbock, which will be designated as the Grain Company, both of whom had their residence and domicile in Lubbock County. Appellee, the Wheeler Bank, filed its amended original petition April 26, 1935. The Grain Company filed its plea of privilege April 10, 1935, and the Lubbock Bank filed its plea of privilege on the 27th of March, 1935, both of which were in proper form as provided by the statute, and on April 18, 1935, appellee, the Wheeler Bank, filed its controverting affidavits to the pleas of privilege in which it alleged the Grain Company had an agent in Wheeler County with authority to purchase grain from farmers for its account, and that such agent did purchase grain from various farmers named in the petition on a cash basis and drew drafts for the payment thereof on the Grain Company through the Lubbock Bank. It alleged that when the farmers began to present the drafts to it for payment, it called the Lubbock Bank, presumably by telephone, and informed it of the fact that the drafts were being issued by the Grain Company and were being, and would be, presented to it for payment, and made inquiry as to whether the Grain Company had authority to draw them and whether they would be paid, to which inquiry the Lubbock Bank answered in the affirmative. It alleged that the drafts listed in its petition were drawn by the Grain Company's agent, presented to it by the payees and paid by it and then by it presented to the Lubbock Bank for payment, which was refused. It alleged a second inquiry of the Lubbock Bank as to why it had not paid the drafts that had been presented and was informed they would be paid if the Wheeler Bank would refrain from stopping the grain in transit or in any manner interfering with the marketing thereof until the Grain Company had time and opportunity to obtain settlement upon the shipments and that, believing such representations to be made in good faith, it did refrain from in any manner interfering with the shipments. It further alleged that in the meantime, while it was waiting and relying upon the promises of the Lubbock Bank, the grain was loaded on railroad cars in Wheeler County and bills of sale were executed by the Grain Company to the Lubbock Bank and the grain

moved to market, sold, and the proceeds received by the Lubbock Bank. It charged that the whole scheme and acts of the Grain Company in purchasing and handling the grain and the promises of the Lubbock Bank that the drafts given to the farmers for the purchase price of same would be paid and the conduct of both the Grain Company and the Lubbock Bank, in cooperation with each other, resulted in each and both of them obtaining the grain and the proceeds from its sale and appropriating the same to their own use and benefit and constituted a fraud upon the payees or farmers who accepted the drafts and a fraud upon the Wheeler Bank, and also constituted a conversion of the grain and the proceeds arising from its sale, all of which occurred in Wheeler County. It alleged that all of these allegations were made in its petition which was made a part of the controverting affidavits and that venue was properly laid in the district court of Wheeler County under article 1995, subdivisions 4, 7, 9, 23 and 29a of the Revised Civil Statutes of 1925, Vernon's Ann.Civ.St. art: 1995, subds. 4, 7, 9, 23, 29a.

Hearing upon the pleas of privilege and controverting affidavits was continued until May 27, 1937, when, upon a hearing, the trial court overruled the pleas of privilege and held that venue was properly laid in the district court of Wheeler County.

The Lubbock Bank duly excepted and gave notice of appeal; but the Grain Company apparently accepted the judgment of the trial court and has prosecuted no appeal therefrom.

The case is presented in this court upon two assignments of error, the first of which assigns error of the trial court in overruling the plea of privilege because there is no evidence that the Lubbock Bank fraudulently or otherwise promised the Wheeler Bank to pay the Grain Company's drafts, and the second assigning error in such ruling because there is no evidence that the Lubbock Bank, jointly or otherwise, converted grain or the proceeds thereof in Wheeler County where the suit was filed.

The principal contention made by appellee in support of the venue of the district court of Wheeler County is that such venue was properly laid because, under its pleadings, venue was properly laid in Wheeler County as against the Grain

Company for conversion of the grain in that county, and it alleged a joint cause of action against the Lubbock Bank and, having proved the grain was converted in Wheeler County by the Grain Company and alleged a joint cause of action against the Lubbock Bank, it thereby discharged the burden resting upon it to establish venue against both defendants, although each and both of them were non-residents of that county.

■ We question the soundness of this proposition of law, although it seems to have support in the holdings of some of our courts. A careful comparison of the provision of subdivision 4 and subdivision 29a of article 1995 will reveal that the effect of the language used in the two subdivisions is to differentiate them in reference to the procedure necessary to follow in establishing venue against what we shall call the second defendant who, in each case, is a non-resident. Subdivision 4 simply provides that if two or more defendants reside in different counties, suit may be brought in any county where one of them resides. The substance of venue under that subdivision is the residence of the local defendant. When that is established, which, incidentally, must be by proof, venue is properly laid as to all other proper parties to the suit. The courts have uniformly and correctly held that the proper source from which to derive information as to the other parties, is the petition. The question as to who such other parties may be is incidental. It matters not who they may be, whether resident or non-resident defendants, they are subjected to the venue of the forum by the residence of the local defendant.

■ The effect of the language used in subdivision 29a is quite different and places a more onerous burden upon him who seeks to subject the second defendant to non-resident venue. It provides that whenever there are two or more defendants in any suit which is lawfully maintainable under the provisions of article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto. This subdivision specifically designates the second defendant or defendants. They must be necessary parties to the suit before they can be subjected to the non-resident venue. The wording of the subdivision has the effect of establishing two fundamental elements of venue instead of one, as is the case in subdivision 4. Those two elements are, first, a cause of action against the first defendant and that the second defendant is a necessary party to the suit. We conceive of no reason for requiring proof of residence under subdivision 4 other than that the residence of one of the defendants is the substance of the venue. If the substance consists of two elements as in subdivision 29a, the proof of one element is as essential as proof of the other would be.

■ However that may be, according to appellee's contention, it is essential that a joint cause of action be alleged against the second defendant, and we do not agree with appellee in this case that such a cause of action has been alleged against the Lubbock Bank. It is true the petition charges that the whole scheme by which the farmers of Wheeler County were induced to deliver their grain in exchange for the drafts and permitted their grain to be shipped out of the county, including the promises and representations of the Lubbock Bank, was a fraud upon the rights of such farmers and of plaintiff, Wheeler Bank, and that the defendants were acting together and in cooperation and with a common design and purpose to obtain the grain and the proceeds of its sale and apply them upon the indebtedness of the Grain Company, but these allegations constitute nothing more than conclusions of the plaintiff. No facts are alleged which would constitute a scheme and nothing is charged that would establish cooperation or common design and purpose. The only allegation that could be called one of fact which would result in such scheme, common design or purpose, is the allegation in the petition and the controverting affidavits that after the grain was placed in the railroad cars for shipment and after it had been consigned to other parties, the Grain Company executed bills of sale and conveyed it to the Lubbock Bank and that when it was sold the Lubbock Bank received the proceeds and applied them to the indebtedness of the Grain Company. This does not show a scheme nor could it have resulted in a common design and purpose fraudulently to obtain the grain from the farmers of Wheeler County because it had already been procured from them and by them delivered to the agent of the Grain Company. Moreover, the

agent of the Grain Company had delivered it to the railroad company for shipment and received bills of lading. It is not alleged that the grain was in Wheeler County when the Grain Company conveyed it by bill of sale to the Lubbock Bank and any act on the part of the Grain Company and the Lubbock Bank which occurred after it had been procured from the farmers and delivered to the railroad could result in nothing more than a subsequent conversion of the grain by the Lubbock Bank for which neither defendant could be sued in Wheeler County in the absence of an allegation and proof that it took place in that county. The subject of this action is not a subsequent conversion which took place when the grain was conveyed by bill of sale to the Lubbock Bank, but an alleged conversion which occurred when the agent of the Grain Company procured the grain from the farmers of Wheeler County. Not having alleged facts which were sufficient to connect the Lubbock Bank with that act of the agent of the Grain Company, and not having alleged the grain was in Wheeler County when it was conveyed by bill of sale to the bank, appellee has not shown a case in which it has the right to maintain its cause of action against the Lubbock Bank in Wheeler County. Henderson Grain Co. v. Russ, 122 Tex. 620, 64 S.W.2d 347; Boydston v. Morris, 71 Tex. 697, 10 S.W. 331; Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W.2d 713; Sun Co. v. Wyatt, 48 Tex.Civ.App. 349, 107 S.W. 934; Dyer v. Hauser, Tex. Civ.App., 100 S.W.2d 787.

Upon hearing of the plea of privilege appellee sought by evidence to prove facts in support of its allegations as to venue. The evidence wholly failed to establish its allegations with reference to statements or promises of the Lubbock Bank to the effect that the drafts drawn by the agent of the Grain Company in Wheeler County would be paid. The most that can be said concerning the effect of the conversations that occurred between representatives of the two banks is that after the drafts had been issued by the agent of the Grain Company and presented to and paid by the Wheeler Bank, a representative of that bank went to Lubbock and talked with Mr. Hardwicke, the cashier of the Lubbock Bank, about them; that Hardwicke was informed of the facts concerning the sale of the grain by the farmers in Wheeler County; and it was suggested that in the event the drafts were not paid, the Wheeler Bank would stop the grain and make an effort to re-sell it to someone other than those to whom it had been consigned. In reply to this statement, Mr. Hardwicke stated that he felt the whole thing would work out all right and suggested that the representative of the Wheeler Bank take the drafts back to Wheeler and redeposit them for collection, stating, in effect, that he believed the Grain Company would work out of the situation and the matter be cleared up to the satisfaction of all parties. It is shown that this suggestion was acquiesced in by Mr. Holt, who represented the Wheeler Bank in the conversation. Mr. Holt testified that such a course in handling the drafts was as much his idea as it was the idea of Mr. Hardwicke; and that it was largely for the purpose of making a record of the manner in which the drafts were to be handled. The grain had all been shipped out of Wheeler County when this conversation took place and the drafts had theretofore been issued by the Grain Company's agent and paid by the Wheeler Bank. The Lubbock Bank, at that time, however, had received from the Grain Company a bill of sale to a considerable quantity of grain located in a warehouse at Lubbock. The evidence does not show that any of the grain included in the bill of sale was the identical grain or any portion of it that had been purchased by the Grain Company in Wheeler County. In fact, the evidence is rather to the contrary because it is undisputed that the grain shipped out of Wheeler County was "headed" grain; that is, it had not been threshed but was in bulk and still in the condition in which it was when removed from the stalk; whereas, the grain purchased under the bill of sale by the Lubbock Bank was threshed grain contained in sacks. No witness testified that any of the grain shipped out of Wheeler County was included in it nor was it shown that the Wheeler County grain was at any time subjected to the process of threshing or placed in sacks.

■ The only wrongful acts charged in the petition against the Lubbock Bank through which a cause of action of any kind could be said to accrue to the Wheeler Bank were, first, that the Lubbock Bank made promises to the Wheeler Bank concerning the payment of the drafts and,

**1158**

second, that it obtained the grain that was shipped out of Wheeler County and paid for by the Wheeler Bank under circumstances which would make it guilty of conversion in Wheeler County. From the foregoing summary of the evidence it will be seen that neither of these allegations was established by the evidence. The establishment of one or the other of these charges was necessary before it could be said the Lubbock Bank was a necessary party to the action. As neither of them was established by either allegation or proof, appellant's plea of privilege should have been sustained.

If it could be said that the allegations of the petition are sufficient under the rule contended for by appellee, and that proof of them as against the Lubbock Bank was not necessary in a case of this kind; the evidence, all of which was introduced by appellee, disproves all of the allegations that could be construed as constituting a scheme or common design of the Lubbock Bank and the Grain Company to convert the grain and, since the evidence was introduced by the appellee, we would not be warranted in ignoring it even though proof of the alleged facts was not necessary as against the Lubbock Bank.

The judgment of the trial court is reversed and the cause remanded to that court with instructions to sustain appellant's plea of privilege and transfer the case against it to the district court of Lubbock County.