**BOERNER et ux. v. CICERO–SMITH LUM-
BER CO.  (No. 821–4865.)**

Commission of Appeals of Texas, Section B.
Oct. 19, 1927.

**1. Sales ⬤�ané44—Application for credit is rep-
resentation by implication of existence of an
intent to pay for goods.**

Application for credit or for delivery of
goods is a representation by implication of the
existence of an intent to pay therefor, and like-
wise a representation by implication of the non-
existence of an intent not to pay.

**2. Sales ⬤➭52(7)—Inability or failure to pay
does not indicate fraud at time of purchase of
goods.**

Inability or failure to pay for goods pur-
chased is not sufficient to sustain an allegation
of fraud on part of purchaser, of an intent not
to pay, at time he purchased the goods.

**3. Trusts ⬤➭110—Evidence of intention not to
pay for building materials held insufficient to
establish trust.**

In action to recover purchase price of
building material and to establish a trust in
plaintiff's favor arising from fraud of defend-
ants in making the purchase, evidence of de-
fendant's fraudulent intention not to pay for
materials when bought *held* insufficient to es-
tablish trust.

**4. Trusts ⬤➭110—Unwillingness to pay for
building materials from proceeds of home-
stead held not to constitute evidence of fraud
justifying establishing trust.**

In action to recover purchase price of build-
ing material and to establish a trust in plain-
tiff's favor arising from fraud of defendants in
making the purchase, on theory that buyer of
materials at time of buying them did not intend
to pay for them, buyer's unwillingness to pay
debt out of proceeds of homestead, even though
he was able to do so, *held* no evidence of fraud,
establishing trust.

Error to Court of Civil Appeals of Seventh
Supreme Judicial District.

Action by the Cicero-Smith Lumber Com-
pany against F. W. Boerner and wife. Judg-
ment of Court of Civil Appeals (293 S. W.
632) reforming and affirming a judgment for
plaintiff, and defendants bring error. Re-
versed, and judgment rendered for defend-
ants.

Vickers, Campbell & Schenck, of Lubbock,
for plaintiffs in error.

Bean & Klett and Robt. H. Bean, all of
Lubbock, for defendant in error.

SHORT, J.  The writ of error has been
granted to review the judgment of the Court
of Civil Appeals for the Seventh District.
Justice Jackson thus states the case in that
court:

"This suit was filed in the district court of
Lubbock county, Tex., on October 29, 1923, by
the plaintiff, Cicero-Smith Lumber Company,
a corporation, against the defendants F. W.
Boerner and his wife, Ora Boerner, to recover
the purchase price of certain building material
sold by it to F. W. Boerner, and to establish a
trust arising in its behalf on account of the
fraud perpetrated on it in the purchase of the
material.

"The plaintiff, by its amended original peti-
tion filed November 8, 1923, alleges that on or
about March 15, 1921, F. W. Boerner gave his
note for the sum of $1,336.95, payable to the
plaintiff one year after date, bearing interest at
the rate of 10 per cent. per annum, and con-
taining the usual attorney's fee clause, which
note was secured by a second mortgage on per-
sonal property thereafter appropriated to the
payment of the first mortgage; that the note
was given in payment for building material of
the value of $1,336.95, theretofore sold and de-
livered by the plaintiff in good faith to F. W.
Boerner, who promised and represented that he
would pay therefor; that such promise and rep-
resentation were false and fraudulent, and made
with the intention of obtaining the material
without paying for it; that plaintiff relied upon,
and was deceived by, such false promises, which
were repeated from time to time, and but for
which it would not have delivered the material
or accepted the note and mortgage, or treated
with Boerner as a debtor; that the possession
of the material was obtained by such false
promises to pay with the intention not to do so
without the knowledge of plaintiff of such
fraudulent intent, and the title to the material
remained in it, and the defendants became trus-
tees thereof for its benefit; that the material
was used in permanent improvements placed on
four blocks of land, which was city property,
and the material became a part of the real es-
tate, which, together with the material, was im-
pressed with a trust in favor of plaintiff for the
amount of its debt; that the land without the
improvements was sold to the state of Texas
for cash, and the proceeds of the sale deposit-
ed in certain banks; that a part of the pro-
ceeds was used in the purchase of lot No. 20 in
block No. 153 of the original town of Lubbock,
and lot No. 18 and the east one-half of lot No.
17, in block No. 31 in the Overton addition to
the city of Lubbock; that said lots were con-
veyed to Ora Boerner as her separate property,
but not purchased with her separate estate,
and, if they were, she took title with notice of
plaintiff's claim, and the deeds to her were
made in fraud of plaintiff's rights; that a part
of the improvements on said four blocks of land
constructed out of the material sold by plaintiff
to defendants were, after the sale of said land
to the state, removed and placed on said lot
No. 20; that plaintiff still holds the note, which
is past due and unpaid, but learned only a week
before the filing of its amended petition of the
falsity of the promises and representations of
the said Boerner to get possession of the mate-
rial, since which time it does not claim the note
or recognize its acceptance in payment of its
debt, but says the defendants are indebted to it
because the material was acquired by false rep-
resentations and promises, and it is entitled to
have the lots conveyed to Ora Boerner as her
separate property, and the funds received from
the sale of the four blocks, impressed with a

trust for the value of the material, with interest at the rate of six per cent. per annum from January 1, 1922, and to have its equitable lien foreclosed for the payment of its money.

"Plaintiff pleads in the alternative that, if mistaken in the foregoing allegations or the relief sought, in any event the defendants obtained the material for which the note was finally given, under false promises and representations as above alleged, and they are liable in tort for damages to the extent of the value of the material at the time it was obtained, with interest from March 21, 1921, at the rate of 6 per cent. per annum.

"Plaintiff sued out a writ of garnishment in an effort to impound the moneys received from the sale of the four blocks of land, but without success.

"The defendants answered by plea in abatement, general demurrer, numerous special exceptions, general denial, and pleaded that the four blocks of land were their homestead until the fall of 1923, when it was sold to the state of Texas, and the proceeds received therefor were exempt; that a part of such proceeds was invested in lot No. 20 in block No. 153 of Lubbock, Tex., and in lot No. 18 and the east one-half of lot No. 17 in block No. 31 of the Overton addition to the town of Lubbock, Tex., which were conveyed to Ora Boerner as her separate property in payment of money she had theretofore loaned her husband from her separate funds, and said lots are her separate property; that the material was purchased by F. W. Boerner in the latter part of 1919, when he was solvent, for the purpose of making improvements on his homestead, and with the intention of paying for said material, but, on account of business disaster, he was unable to meet his debts as they matured, and plaintiff accepted the note for the debt, secured by the second mortgage, knowing of his financial condition, and thereby waiving any and all fraud, and is estopped from claiming that the material was obtained by false promises and representations; that the plaintiff knew the facts and circumstances upon which the fraud is alleged more than two years before the institution of the suit, and its cause of action is barred by the statute of two-year limitation.

"F. W. Boerner pleaded that he was adjudged a bankrupt on November 3, 1923, by the United States District Court for the Northern District of Texas, and the debt sued on was thereby discharged.

"Ora Boerner pleaded coverture, non est factum as to the note; that she did not contract the debt; that the material was not sold or delivered to her, or for the use of her separate property; that she never authorized the debt, or in any way obligated herself to pay it; and that said lots 20, 18, and the east one-half of 17 are her separate property.

"By supplemental petition the plaintiff pleaded, in reply to defendants' answer, a general denial; that the four blocks of land were not the homestead of the defendants, but were city property, and of the value of $20,000 above the improvements at the time of the designation, and therefore not exempt; that its cause of action was not barred by limitation, for the reason that it made the sale of the material in good faith, believing and relying on the representation of F. W. Boerner that he would pay therefor, and did not know that he did not intend to pay therefor, and did not discover such fraudulent intention until a week or two before the institution of the suit, and was not barred by limitation, and not discharged by the bankruptcy proceedings.

"In response to special issues submitted by the court, the jury found in effect that the material was purchased by F. W. Boerner from the plaintiff upon the promise that he would pay therefor; that he obtained the material without any intention of paying for it, and that the plaintiff did not discover the intention of said defendant not to pay for the material two years before the institution of the suit.

"On this verdict the court entered judgment that the plaintiff recover of the defendant F. W. Boerner the sum of $1,876.00, with interest from August 30, 1926, at the rate of 6 per cent. per annum, and costs of suit; that lot No. 20 in block No. 153 of the original town of Lubbock, in Lubbock county, Tex., be sold as under execution, and the proceeds of the sale, after discharging the costs, be applied first to the satisfaction of the judgment, and the balance, if any, paid to the defendant Ora Boerner."

The Court of Civil Appeals reformed the judgment of the trial court in a small particular, and as so reformed, affirmed it. 293 S. W. 632.

We have examined the entire statement of facts and are inclined to the view there is no evidence to support the Court of Civil Appeals' holding that plaintiff in error's 20-acre homestead was urban rather than rural in its nature. But we need not decide that question.

We are also inclined to the view that the Court of Civil Appeals misconstrued the effect of the language in Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145, as authority for its holding that the value of the property, if the same should be treated as urban, was to be considered in determining the extent of the exemption, in 1923 rather than in 1918 when the property was designated as a homestead, but we need not decide this question.

[1, 2] The gist of defendant in error's right to recover at all lies in its allegation of fraud upon the part of plaintiff in error F. W. Boerner, at the time he purchased the materials in controversy. It is alleged that at the time of such purchase his promise and representation of cash payment were false and fraudulent and made with the intention of obtaining such material without paying for it. It is readily admitted that such intention not to pay will constitute such fraud as will authorize relief to the injured party. And the Court of Civil Appeals has cited apt authorities to this point. But it is equally as clear that such allegation must be supported by competent evidence to authorize a recovery. As we view the record, there is no evidence whatever to support these allegations, and therefore to authorize the submission of the issue or the rendition of a judgment based upon such a finding.

[3] Even though there was no express false statement at the time of the purchase, nevertheless the act of purchasing upon a cash basis necessarily implied that the purchaser intended to pay for the merchandise and, if he secretly intended not to pay therefor, his conduct would be such fraud as would be actionable. The application for credit, or for the delivery of the goods, is a representation by implication of the existence of an intent to pay therefor, and likewise a representation by implication of the nonexistence of an intent not to pay. But, as above indicated, such wicked intention is not shown by inability or failure to pay; such intention must be proven in some of the ways recognized by law. "A preconceived intention not to pay for goods purchased may be evidenced by circumstances, as by the fact that the purchaser had no reasonable expectation of being able to pay for them, by the sudden expansion of his business, the accumulation of goods beyond the ordinary amount, a resale of all or a part of the property at a reduced price, and its repurchase, absconding with the goods, or an unexplained refusal shortly after the sale to pay for the goods in cash as agreed, or a refusal to pay for them on the ground that they were bought by the debtor's wife." 12 R. C. L. p. 268, § 34, and possibly others. There is nothing in the evidence which would bring this purchase under any of the circumstances instanced or any other that we can conceive of tending to show the intention not to pay relied upon as a basis for recovery.

Plaintiff in error F. W. Boerner testified:

"The only statement made by me at the time as to my financial condition was that I stated to Mr. May that I wanted the lumber on open account and could not pay for it, and possibly would pay for it in the fall or winter; at that time I intended to pay for it. * * * I did not have any design in mind to cheat Cicero-Smith Lumber Company at the time I bought this lumber from them. I intended to pay for it and would have paid for it if I had been able, but in 1923, when I took bankruptcy, the hog business had got to where you could not sell a hog at all. Values dropped, and people were out of feed and they had to buy their feed. I devoted my whole time to the hog business out there. I was not responsible for the drop in the hog prices and could not help it. I made every effort to make a go out of it."

Of course, this testimony is of little or no value in the present inquiry if there is any other evidence upon the point tending to a contrary conclusion.

The witness May, manager for defendant in error, testified.

"Referring to his purchase in September or October, 1919, he came in to buy the bill of material, and it was understood that it would be a cash bill. He did not make any arrangements with me to carry the bill for any length of time, but said he would pay for it when he got through getting the material. That was the understanding and impression he left with me, and I believed what he said about it."

Then he continued his evidence as follows:

"I went to see Mr. Boerner and took up with him the matter of this account from time to time, but I did not get the money. We kept after him to give us some security on it, and he objected to doing it, but finally after Mr. Johnson talked to him he consented to give us a second mortgage on some stuff that the bank had a first mortgage on. * * * I had no reason up to that time to believe that he did not intend to pay us until he showed an inclination not to be willing to give us a mortgage or to secure us for the indebtedness. * * * I accepted the note and mortgage believing that he intended to pay us when he could."

The note and mortgage was given March 15, 1921.

Mr. May further testified:

"We took the mortgage thinking with some ray of hope that it might help us in getting the money; we accepted the note. We put the mortgage of record. * * * Mr. Boerner did not make a single representation to me at the time he bought this material that I claim was false. * * * The way he defrauded us was by misrepresenting the case to us by not doing what he said he would do. He agreed to pay for the material when he got it and promised me a number of times later that he would pay for it and did not do it. * * * I did to an extent keep carrying it along on his promise to pay for it in the future. * * * On March 14, 1921, we extended that indebtedness to March 1, 1922, by this note. Mr. Johnson, our president, knew about that and acquiesced in it."

On the question of knowledge, Mr. May said:

"We discovered he did not pay for it when we let him have the stuff. * * * The reason I did not go and try to recover that material at that time (meaning when he knew it not paid for as promised) was because I did not want the material in the house. * * * I thought at different times that he would pay for it; he told me all along he would pay for it."

[4] The circumstances surrounding plaintiff in error's purchase do not tend to show fraud. It does not appear that he had no reasonable expectation of being able to pay for this moderate purchase; it was a most reasonable purchase in connection with his modest business of farming and raising of fine hogs; he never, at any time, denied liability, but on the contrary recognized liability and executed a chattel mortgage, even though a second lien, to secure its payment. His explanation of the failure of his business and the consequent bankruptcy years after the purchase is not contradicted. His unwillingness to pay the debt out of the proceeds of the homestead, even though he was amply able to do so, cannot be held to be any evidence whatever upon the issue under con-

sideration. Such conduct may not be good morals, but certainly it does not violate any rule or principle of law. The exemption statutes would be of doubtful protection to our citizens if every time one availed himself of their protection he was to be charged with evil and unlawful motives.

Defendant in error has cast the case along the lines of specific fraud, and it can in no event recover except upon proof of those allegations.

This absence of fraud is fatal to any recovery by plaintiff whatever, since it is undisputed that plaintiff in error F. W. Boerner has been discharged in bankruptcy.

We therefore recommend that the judgments of the Court of Civil Appeals and of the trial court be reversed, and that judgment should be here rendered for plaintiffs in error.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both reversed, and judgments rendered for the plaintiffs in error, as recommended by the Commission of Appeals.