**TANNER et al. v. JACKSON.**

No. 6199.

Court of Civil Appeals of Texas. Amarillo.

Jan. 7, 1952.

Boling, Smith & Allen, Lubbock, for appellants.

Campbell & Brock, Lubbock, for appellee.

MARTIN, Justice.

Appellants, Stanley Tanner and Charlie Archer, residents of El Paso County, Texas, met appellee, Vernon L. Jackson, a resident of Lubbock County, Texas, in Ruidoso, New Mexico. Appellants allege that appellee became indebted to Tanner in the amount of $1,995 for gambling losses incurred at Ruidoso. The record details numerous transactions and representations whereby the scene of activity was transferred from Ruidoso, New Mexico, to Lubbock and from there to El Paso.

In El Paso the appellants prepared a receipt for $1,500 and stated therein that the $1,500 was in full payment for a 1950 Dodge Pick-up One Ton Truck owned by the appellee and located in Lubbock County. Appellee's signature was obtained to this receipt. Upon obtaining the receipt, after appellee had also lost money and other property in El Paso by theft or by some taking not wholly explained, appellant Archer went back to Lubbock with appellee for the truck described in the receipt for $1,500. Appellants admit that $1,500 did not pass to appellee but contend they cancelled that amount of the gambling debt allegedly due Tanner.

Appellee, who had been gullible and apparently unable to cope with appellants in all the transactions, absented himself from Archer in Lubbock and placed a sign on his truck that the same was not to be moved and also removed the distributor cap from the truck. Archer obtained a wrecker and took the truck from appellee's premises in Lubbock County, and after placing a distributor cap on the truck drove it to El Paso and delivered it to Tanner who re-moved the same into the Republic of Mexico.

No Texas Certificate of Title was ever delivered appellants on this truck and appellee filed suit in the District Court of Lubbock County for conversion of the truck, and under court order the truck was delivered back to appellee. Appellants duly filed their plea of privilege to be sued in El Paso County, Texas, and appellee filed a controverting affidavit as to this plea.

Appellee made his original petition a part of his controverting affidavit and sought to hold venue in Lubbock County, Texas, under exceptions 7 and 9, Article 1995, Vernon's Annotated Texas Civil Statutes. His petition sets up a cause of action for conversion of the truck in Lubbock County, Texas, and also alleges that fraud was practiced on appellee in Lubbock County, Texas. Appellants contend that the controverting affidavit is defective. Appellee's petition does show items of damage other than the truck but the gist of the action, and basis therefor, is the conversion of the appellee's truck in Lubbock County, Texas. The trial court found this controverting affidavit sufficient and supported by proof and overruled the plea of privilege. Appellants perfected their appeal.

The controverting affidavit with petition incorporated therein is sufficient. Exceptions 7 and 9, Article 1995; Bowers v. Bryant-Link Co., Tex.Com.App., 15 S.W. 2d 598; Davis v. Bailey, Tex.Civ.App., 187 S.W.2d 412; Cantey v. City National Bank, Mineral Wells, Tex.Civ.App., 95 S.W.2d 475; Hawkins v. Schroeter, Tex. Civ.App., 212 S.W.2d 843, [3].

Appellants alleged that their plea of privilege was improperly overruled in that the deal for the Dodge truck was consummated in El Paso County, Texas. There is no dispute as to the appellants forcibly taking the truck in Lubbock County, Texas. Further, appellants only contention as to any consideration being paid for the truck is that the truck was delivered to them as part payment on the $1,995 gambling debt. The record reveals that appellant Tanner also obtained $455 in cash in addition to the truck. This money was obtained by

means of a check which was inadvertently paid by a Lubbock bank after appellee had stopped payment on the same.

■ Title to the truck did not pass under the receipt for $1,500 as shown in the statement of facts. Vernon's Ann. Penal Code, art. 1436–1, Sec. 53; Manning v. Miller, Tex.Civ.App., 206 S.W.2d 165 [4]; Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938, [1 and 2]. Since the appellants did not obtain title by the receipt shown and no consideration was paid for the truck, their forcible taking of the truck was conversion and a trespass committed in Lubbock County within exception 9, Article 1995. Bowers v. Bryant-Link Co., Tex.Com.App., supra; Jones v. Boyd, Tex.Civ.App., 286 S. W. 1006; Davis v. Bailey, Tex.Civ.App., 187 S.W.2d 412; Commercial Credit Corp. v. Harris, Tex.Civ.App., 225 S.W.2d 247.

■ In addition to the issue of conversion of the truck, the record sustains a finding as to the entire transaction being fraudulent. It is evident that the representations made by Tanner as to his buying appellee's business in Lubbock County, Texas, were fraudulent and were merely a part of a fraudulent scheme to induce the appellee to go with the appellant Tanner to El Paso, Texas, where appellee was filched of $425 in cash, $455 by check, a Masonic pin, binoculars, and executed the receipt for $1,500.

■ Without quoting the record in detail and giving full credit for gambling, fair or otherwise, the evidence does not even sustain appellants' theory that the truck was theirs as credit on a $1,995 gambling debt. Appellant Tanner's own testimony is that $700 was bet upon appellee's contention that "Diamond Bob beat Bright Eyes." The statement of facts reveals that the bet was not limited as to the time when Diamond Bob beat Bright Eyes. Tanner's testimony is as follows: "So the next day we got up and went to the races and we talked to two or three people. They stated Diamond Bob beat Bright Eyes, but nobody could relate just when. So we didn't find out." It is observed that Tanner in the face of this testimony and without further clarification lamely stated, "I had won the horse race." And it is likewise observed that in this state of the record Tanner took credit for $700, a part of the $1,995 total. The courts do not recognize the legality of a gambling debt, but the above testimony of Tanner reveals that the purported gambling was merely a fraud never rising even to the stature of gambling.

It is also evident that Archer was merely the henchman of Tanner and he admits that he has been filed on for "fighting, murder, every other thing." That he is a henchman of Tanners is evidenced by Tanner's purported pay-off to Archer in Ruidoso covering appellee's asserted gambling losses to Archer and by the further fact that about the time appellee was ripe for picking, Archer showed up in El Paso. Archer also took over, in appellee's presence, the $455 check after binding appellee as to the check being good. Archer also went to Lubbock and forcibly took the truck, evidently for Tanner, as Archer had already apparently been paid off in Ruidoso by Tanner for any amounts that appellee purportedly owed him. Archer also presented appellee's $455 check at the bank in Lubbock. The record sustains the trial court's finding of fraud committed in Lubbock County as a part of a concerted plan to deprive appellee of his property. Exception 7, Article 1995; Lasater v. Vandiver, Tex.Civ.App., 29 S.W.2d 428; Jones v. Boyd, supra; Bowers v. Bryant-Link Co., supra.

An examination of the record reveals that appellants, Tanner and Archer, conceived and followed to its termination a fraudulent scheme to deprive appellee of his property and did forcibly convert appellee's truck in Lubbock County, Texas, and venue as to the cause of action against them lies in Lubbock County, Texas.

Appellant's Points One and Two are overruled, and the judgment of the trial court is affirmed.