**CASTRO COOPERATIVE GIN COMPANY et al., Appellants,**

**v.**

**W. B. HARRISON et al., Appellees.**

No. 3108.

Court of Civil Appeals of Texas.

Eastland.

Oct. 22, 1954.

Cowsert & Bybee, Hereford, for appellants.

Watson & Watson, Stamford, for appellees.

**GRISSOM, Chief Justice.**

W. B. Harrison and R. W. Herren sued Castro Cooperative Gin Company, a private corporation with its office in Castro County, and its president P. B. Robb, a resident of Castro County, in Haskell County. Plaintiffs alleged the gin company intentionally, fraudulently and maliciously, in wanton disregard of plaintiffs' rights, sent Robb, its president, to plaintiffs' gin plant in Haskell County and represented (1) "that the—gin company was interested in purchasing one steel bin and burr dropper" and that Robb, maliciously and in wanton disregard of plaintiffs' rights, took said bin and burr dropper and (2) fraudulently represented that the gin company would pay its reasonable value; and that (3) said defendants "did not at the time of representing that the—Gin Company—would pay for said steel bin and dropper, intend and has not since intended to ever in good faith purchase said steel bin and burr dropper or pay for same, but procured possession thereof for the purpose of keeping same under an alleged right under a contract which had previously been entered into" between plaintiffs and defendants and that Robb "fraudulently obtained possession of said steel bin and burr dropper under misrepresentations to pay for the same".; that Robb, maliciously and fraudulently, took possession of plaintiffs' bin and burr dropper, of the value of $12,000, on October 29, 1952, for the purpose of appropriating it to defendants' use and benefit, knowing plaintiffs were not aware of their fraudulent scheme to take them and not pay therefor; that said representations were made in Haskell County on October 29, 1952; that defendants have not paid for said property but have retained possession in disregard of plaintiffs' rights; that when plaintiffs learned of defendants' fraudulent and malicious scheme they demanded the return of the bin and burr dropper but defendants refused to return them; that said acts in so obtaining possession of the bin and burr dropper and not returning same after demand constituted a conversion, wherefore, plaintiffs sued for $1,200 actual damages and $1,000 exemplary damages. Defendants filed a plea of privilege to be sued in Castro County. Plaintiffs filed a controverting affidavit in which they adopted their petition and alleged that, within exception 9, Article 1995, Vernon's Ann.Civ. St., defendants committed a trespass in Haskell County; that they there converted said property; that defendants, by said fraudulent representations made in Haskell County obtained possession of said bin and burr dropper located there; that the gin company was a private corporation and the cause of action alleged arose in Haskell County, within the meaning of exception 23, Article 1995. That, therefore, the suit was maintainable there under exceptions 7, 9 and 23, Article 1995. Defendants' plea of privilege was overruled and they have appealed.

Appellants' points are, in substance, (1) that because appellees alleged appellants procured possession of the property for the purpose of keeping same by virtue of an alleged right under a contract previously made and introduced such contract, the contract took precedence over all allega-

tions of the petition and venue was in Castro County where the contract was signed and performable, therefore, the court erred in overruling appellants' plea of privilege; (2) that appellees having made such allegations and introduced said contract and the contract showing on its face it was performable in Castro County, the court erred in overruling appellants' plea of privilege; (3) that the court erred in overruling the plea because appellees failed to allege and prove that appellants committed an actionable fraud in Haskell County, within the meaning of exception 7, Article 1995; (4) that the court erred in overruling appellants' plea because appellees failed to prove appellants committed a trespass, within the meaning of exception 9, Article 1995; (5) that the court erred in overruling the plea because appellees failed to prove the cause of action alleged, or any part thereof, arose in Haskell County, within the meaning of exception 23, Article 1995.

Under their first two points, appellants say the nature of appellees' cause of action disclosed by their petition was for debt. They contend, also, that appellees admitted appellants obtained possession and kept the property under an alleged right under a contract previously made and, therefore, the court was required to look to the contract alone to determine the nature of appellees' cause of action; that its nature then changed to an action to construe the contract to determine the liability of appellants thereunder. Appellants say it is evident that if the bin and dropper were included in the sale contract appellants had a right to take it and keep it and did not owe for it. Appellants contend that by introducing the contract appellees became bound by its provisions and that evidence introduced by appellees in an attempt to show that the bin and dropper were not a part of the machinery and equipment of the gin plant merely raised an issue to be determined only on the merits and such evidence could not be considered on the venue issues. Appellants further contend, under said first two points, that the allegations of fraud and conversion were merely incidental to the main cause of action for

debt and construction of the contracts to determine the liability of appellants and for all said reasons the court erred in overruling appellants' plea of privilege.

■ It is evident, although the pleadings are indefinite, that appellees sought to maintain the suit in Haskell County because (1) appellants, converted the property in Haskell County; (2) appellants acquired possession by virtue of fraudulent representations that they would pay appellees for said property when, at the time, they did not intend to pay and, said fraudulent representations having been made in Haskell County, a fraud was committed there and the suit was maintainable there under exception 7, and (3) that the gin company was a private corporation and the cause of action for conversion and fraud, or a part thereof, arose in Haskell County and the suit was maintainable there against the gin company under exception 23. As to (3), it is evident that if any cause of action alleged arose in Haskell County, or elsewhere, it was a cause of action based either on conversion or fraud mentioned in (1) and (2) above. Under the exceptions mentioned, the nature of the cause of action disclosed by the petition was not a venue fact. Appellees were required to allege and prove, by a preponderance of the evidence, as venue facts, that the property was converted or obtained by fraud by appellants in Haskell County. Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91; A. H. Belo Corporation v. Blanton, Tex.Civ. App., 126 S.W.2d 1015; Id., 133 Tex. 391, 129 S.W.2d 619; City of Mineral Wells v. McDonald, Chief Justice, 141 Tex. 113, 170 S.W.2d 466; Newlin v. Smith, 136 Tex. 260, 150 S.W.2d 233; Meredith v. McClendon, Chief Justice, 130 Tex. 527, 111 S.W.2d 1062; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63.

■ Every material portion of the evidence relative to the venue facts was disputed. Judgment having been rendered for appellees, we are required to look alone to the testimony favorable to the presumed findings supporting the judgment and to discard all evidence to the contrary. Olds v.

Traylor, Tex.Civ.App., 180 S.W.2d 511, 514 (Writ Ref.); Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 199.

Of course, if, as appellants contend, the written contract shows as a matter of law, a sale of the bin and dropper to appellants no evidence of prior verbal discussions or agreements relative thereto were admissible. However, if, as to said matters, the written contract was ambiguous such evidence was admissible. 37 Tex.Jur. 213.

The suit cannot be maintained in Haskell County under exception 9, that is, on the ground that the property was converted in Haskell County, if the owners of the bin and dropper consented to the taking thereof by appellants. "Conversion involves a taking of property without the owner's consent; hence there can be no conversion where the owner has expressly or impliedly assented to the taking or disposition." 42 Tex.Jur. 512. See also Terry v. Witherspoon, Tex.Civ.App., 255 S.W. 471, affirmed Tex.Com.App., 267 S.W. 973; Gulf, C. & S. F. R. Co. v. Pratt, Tex.Civ.App., 183 S.W. 103 (Writ Ref.). Likewise, appellants were not guilty of the fraud alleged and no cause of action therefor arose in Haskell County unless at the time appellants took possession they represented to appellees that they would pay therefor and then had no intention to pay. For the present purposes, we shall assume that as to whether or not there was a sale of the bin and dropper the written contract was ambiguous. Looking alone to the testimony supporting the judgment, as we are required to do, there was evidence that no sale of the bin and dropper was intended. There was evidence that because of the unusual location of the Harrison-Herren gin, with homes surrounding it, they could not burn burrs, as is customary, and, therefore, plaintiffs found it expedient to have specially built in Haskell a structure into which the cotton burrs were emptied so that a truck could drive thereunder and have the burrs dumped into the truck so they could be hauled away from the gin site. There was evidence that the bin and dropper were not customarily used as a piece of machinery in the operation of a gin. Mr. Harrison testified that he had owned and sold five gins and this was the only one that had such a structure.

Relative to the alleged cause of action for conversion in taking possession of the property in Haskell County, it was necessary to sustain venue under exception 9, that is, to show a conversion, to prove that appellants took said property without the owners' consent. This appellants failed to do. Appellees failed to prove allegations (1) and (2) referred to in the first part of this opinion. Appellees' testimony relative thereto was that the gin had been sold, removed to Castro County and placed in operation for two weeks and that notes, a deed of trust and a mortgage had been executed; that Mr. Robb came to Haskell County to get some steps, pulleys, and the like, which had been given to him by appellees; that while he was there he said to Mr. Herren that he came after the bin and dropper and Mr. Herren said "We don't owe you that." That Herren told Robb that Harrison owned a greater interest in the gin and "Whatever trade he makes with you will be satisfactory with me." That Robb said:

"A. Ah, we can do ole Dub any way; I'll go ahead and get it." I said "Well, all right."

"Q. From his statement to you, was it your understanding that he was to see Mr. Harrison and arrange some price? A. It was my understanding he would see Mr. Harrison and make some trade with him; or make some disposition of it. If Mr. Harrison wanted to give it to him; that would be all right with me; because he was three-fourths interested in the gin and me only one-fourth.

"Q. It was your understanding that he was to go and make some sort of trade to buy it, is that right? A. Yes, sir.

\* \* \* \* \* \*

"Q. Now, did Mr. Robb take the steel bin and burr dropper on that day

that you were talking about? A. On or about October 28th or 29th, which was two weeks later.

\*   \*   \*   \*   \*   \*

"Q. Then you knew when they came down here to get the pulleys and scraps they were going to come back to get the burr dropper? A. I knew, and I told Mr. Robb he would have to make a trade with Mr. Harrison.

"Q. You knew they were going to come back later to get it? A. Yes, sir. Mr. Harrison was out of town and I didn't get to see him.

\*   \*   \*   \*   \*   \*

"Q. Mr. Herren, when they disconnected this burr catcher, or burr dropper, you supervised the tearing down of it? A. Or cutting down.

"Q. Did you mean the pipe to go? A. I assume they needed the pipe and I didn't have any use for the pipe; you can't sell used pipe to anybody for anything.

"Q. Well— A. No value at all.

"Q. You were around there and did you make the arrangements, or did you get someone to come down and cut it for them? A. I don't recall. I told Mr. Robb I would go up here and get him a man to help him.

"Q. And he got a rig of some sort where they could load it into a truck? A. That's right.

"Q. You did that for them; you got the man for them? A. I didn't even pay the man. Mr. Robb paid the man for cutting it off.

"Q. Then from all of that then, you were turning over to Mr. Robb this burr catcher? A. What was that?

"Q. You turned over to Mr. Robb this burr catcher, didn't you? A. If you could call that turning it over.

"Q. Voluntarily. You were around there and watched it? A. Yes, sir.

"Q. You had a fourth interest in it? A. That's right.

"Q. Partner with Mr. Harrison? A. That's right.

"Q. And there was no prior arrangements whatsoever made? A. No, because I knew and he knew—

"Q. There wasn't any prior discussion, wasn't any amount fixed at all? A. No; but I knew what I could get for it.

"Q. All right. Do you know if the hopper was laying on the ground when Mr. Robb came down here on Wednesday night to get it? A. It was not.

"Q. Still standing up there? A. Yes, sir.

"Q. They had to get someone to cut the legs off and roll it over? A. Yes, sir.

"Q. On that day? A. That's right.

"Q. You are positive about that? A. The day he loaded it, I believe—yes, sir; it was standing up.

"Q. Hadn't been anything done to it then? A. Nothing, except some of the pipe had been taken loose from it, but not at the top.

"Q. Do you happen to know the name of that welder? A. No, I don't; but I knew where he works; he works right down here (indicating).

"Q. What place does he work at? A. Mathis Welding Shop.

"Q. Down here (indicating)? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. Now, Mr. Herren, when Mr. Robb came down and told you he wanted to get that piece, did you tell him that he would have to arrange to pay Mr. Harrison? A. I told him he would have to make a trade with Mr. Harrison.

"Q. All right, now there was an understanding at that time that he—it

was your understanding that he would go arrange a price with Mr. Harrison? A. That was my understanding.

"Q. From what he told you? A. I never thought he wouldn't attempt to pay for it."

Plaintiffs did not testify that Mr. Robb said he would see Mr. Harrison and buy the bin and dropper, or make an agreement relative to acquiring it, but that he merely said that they would take it; that he could do anything with "ole Dub" and Mr. Herren said, "well, all right." Several days thereafter, according to Mr. Herren, Mr. Robb returned to Haskell and got the bin and dropper and Mr. Herren helped him in getting the pieces separated so that it could be loaded on a truck. Mr. Herren did not testify that on that, or any other occasion, Robb told him he had made arrangements with Mr. Harrison to get the property, or that he would pay for it. It is a more reasonable inference from his testimony that Mr. Robb was then doing what he had stated on the previous visit to Haskell he was going to do, that is, "Ah, we can do ole Dub any way. I'll go ahead and get it." In other words appellees' testimony fails to show that appellants took the bin and dropper without appellees' consent. Appellees' testimony likewise fails to show, or justify a finding, that at the time of the taking appellants represented they had an agreement with Harrison or promised to pay for the bin and dropper. If fraud is sufficiently alleged, it is not proved. The burden was on appellees to allege and prove the venue facts required by exceptions 7 and 9, Article 1995, by a preponderance of the evidence. Compton v. Elliott, Tex.Civ.App., 55 S.W.2d 247; Id., 126 Tex. 232, 88 S.W.2d 91. Having failed to prove either the fraud or conversion alleged they failed to prove that a cause of action therefor arose in Haskell County. Austin v. Grissom-Robertson Stores, Inc., Tex.Civ.App., 32 S.W.2d 205, 208. The cause not appearing to have been fully developed, the judgment is reversed and the cause remanded. Lanford v. Smith, Chief Justice, 128 Tex. 373, 99 S.W.2d 593, 594.