Cornelius KROLL et al., Appellants,

v.

Ed W. COLLINS et al., Appellees.

No. 13578.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 2, 1960.

Woodrow Curtis, Pearsall, Davis, Kee & Thomas, Angleton, C. E. Dillon, Dillon & Lee, Bryan, for appellants.

Abney, Hammett & Lynch, Lampasas, for appellees.

POPE, Justice.

This is a venue action which concerns Sections 5, 9, and 29a of Article 1995, Vernon's Annotated Texas Civil Statutes. Plaintiffs, Cornelius Kroll and Lionel Kroll, partners in raising cattle, sued Ed W. Collins in Frio County for breach of a written contract by which Collins agreed to buy and pay for several hundred cattle. Alternatively they sued Collins for conversion of the cattle. Collins resides in Harris County. Plaintiffs also sued Charles Boyd, d/b/a Lomita Livestock Auction Company, of Lampasas County, for conversion for selling the cattle for Collins. The also sued eight other defendants who purchased the cattle. All defendants filed pleas of privilege. The trial court overruled Collins' plea and held venue against him in Frio County, but sustained all of the other pleas. Collins appealed and urges that venue for the suit against him should properly be in Harris County. The Krolls also appealed and urge that venue against Boyd and those who bought the cattle should be in Frio County.

Collins argues that Frio County is not the venue for the action against him under either Section 5 or 9. Collins and the Krolls entered into a letter agreement by which Krolls would sell him 462 cows and their calves, located on the Kroll Ranch in Frio County. Collins obtained delivery of the cattle in Frio County on several days during December, 1958, and obtained the last delivery on December 31, 1958. On that date 225 head of cattle were delivered to Collins at the Kroll Ranch in Frio County. The Krolls and Collins agreed that the cattle would be forthwith taken to scales in San Antonio and weighed. The actual physical delivery was made by loading the cattle on trucks hired and controlled by Collins. Collins took possession in Frio County and nobody denies this. In San Antonio the cattle were weighed and Collins gave Lionel Kroll a check for $32,351.-33 which the Krolls endorsed over and sent to Finance Credit Corporation in Fort Worth, which held a mortgage on the cattle. The Credit Corporation sent the check to Security State Bank at Navasota, Texas, the drawee bank, and on January 9, 1959, Collins stopped payment on the check.

Krolls failed to prove grounds for holding venue in Frio County under Section 5, Article 1995, supra. For that section to apply, the contract must provide for performance in Frio County, expressly naming such county or a definite place therein as the place for the performance of the obligation sued upon. Rogers v. Waters, Tex. Civ.App., 262 S.W.2d 521. The obligation here sued upon is that of payment. The

contract stated that the cattle were located on the Kroll Ranch near Dilley, Texas, but it fails to fix Frio County as the place for payment.[1]

Krolls did, however, prove venue in Frio County under Section 9, Article 1995. By alternative plea, the Krolls alleged that there was a conversion of the cattle in Frio County.[2] The controverting affidavit, upon which the plea was heard, alleged conversion in Frio County.[3] The case was tried upon the conversion allegations without protest from the defendants other than a claimed failure of proof. These matters are set forth with some detail in view of the dissent which asserts that conversion in Frio County was outside the plaintiffs' pleadings. Moreover, the conversion theory was tried by consent of the parties, without objection on trial, and without the point even being mentioned on appeal. Rule 67, Texas Rules of Civil Procedure; Burney v. Winfrey, Tex.Civ.App., 329 S.W. 2d 136; Pacific Finance Loans v. Ingram, Tex.Civ.App., 290 S.W.2d 261; Western Irrigation Co. v. Reeves County Land Co., Tex.Civ.App., 233 S.W.2d 599. The absence of pleadings, therefore, is a point

which the parties did not think suitable to preserve or brief, and the only way this Court could take cognizance of the point is to treat the matter as fundamental error and originate the point ourselves, which we refuse to do.

Upon the alternative plea of conversion the Krolls may retain venue in Frio County under Section 9, Article 1995. Naylor Automotive Service v. First National Bank of Mexia, Tex.Civ.App., 284 S.W. 2d 759. Conversion of personal property is a trespass under Sec. 9. Bowers v. Bryant-Link Co., Tex.Com.App., 15 S.W.2d 598; Amberson v. Wilkerson, Tex.Civ. App., 285 S.W.2d 420; Parchman v. Parchman, Tex.Civ.App., 239 S.W.2d 902. When the delivery of, and payment for, goods are to be concurrent acts, a buyer who receives and refuses to pay for the goods obtains a wrongful possession, which renders him liable in trover. 89 C.J.S. Trover and Conversion § 42; 65 C.J., Trover and Conversion, § 44. This rule has been applied to sales of livestock. John Clay & Co. Livestock Commission v. Clements, 5 Cir., 214 F.2d 803; Johnson v. Robinson, 5 Cir., 203 F.2d 135.

1. "You agree to pay us 21½c per pound for the cows, and 30c per pound for the calves that may be at their side, weighed upon their arrival at San Antonio at the Gurinsky cattle scales, freight and weighing at your sole cost and risk.

"You agree to disclose your sales price as the cattle are sold by you, and pay us the full amount of your sale price before the cattle leave the ranch. Any amounts paid us in excess of the purchase price, based on weights at San Antonio as above provided for, will be credited to your advance payment hereinafter provided for. Any amounts paid us less than the purchase price will be paid us by you upon weighing at San Antonio.

"Upon your confirmation of this letter agreement you will make an advance payment of $10,000.00 to apply against the last cattle removed from the ranch."

2. "In the alternative and only in the alternative in the event Plaintiff is not entitled his judgment against the full amount of his claim against the said

Charles Boyd and Ed W. Collins, then and in such event the Plaintiff prays that all the purchasers of the said cattle unpaid for, that is 125 cows and 100 calves delivered on December 31, 1958, that Plaintiff shall be entitled to recover said cattle from the Defendants or from the persons to whom they sold the said cattle."

3. "Plaintiffs further aver that under Article 1995, Section 9 that venue shall be had in Frio County, Texas, because of the acts of the Defendant, Ed W. Collins, in removing said cattle from the Kroll Ranch in Dilley, Frio County, Texas, and by conversion of the said cattle to the use and benefit of him, the said Ed W. Collins, by means of false and deceitful pretenses and devices and fraudulent representation with intent to appropriate the cattle to use of him the said Ed W. Collins and thereby impairing the right of the Plaintiffs to possession of said cattle, the Plaintiffs being the parties justly entitled to such cattle until such cattle are paid for."

■ The only real point on this appeal is whether there is proof of the claimed conversion in Frio County. Since the trial court held venue in Frio County, we must look to the proof and inferences favorable to the presumed findings supporting that judgment. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Castro Co-operative Gin Co. v. Harrison, Tex.Civ.App., 272 S. W.2d 538, 540. The proof supports implied findings by the trial judge that when the Krolls delivered the cattle into defendant Collins' trucks in Frio County they believed Collins' statement that he would pay promptly upon weighing in San Antonio. Subsequent events support the idea that at the very time of delivery in Frio County Collins had the intent of stopping payment on the check. This appears from what happened just before the final delivery was made. Under the written contract, Collins had deposited with Krolls $10,000 in cash, which they were to hold until settlement on the final delivery. By reason of certain overpayments on earlier deliveries, Krolls actually had $13,000 on deposit. The proof shows that just before the last delivery of cattle Collins persuaded Krolls to credit the amount on deposit to the purchase price of cattle already delivered. Because their relationship had been satisfactory, Krolls did this, so that prior to the final delivery Collins had settled with Krolls for all cattle already delivered and Krolls held no money to protect themselves on the final delivery. Not until this situation developed did Collins, with 225 head of cattle unpaid for and in his possession, stop payment. The trial judge, no doubt, concluded that this was a scheme by which Collins could obtain the cattle, promptly sell them, and stop payment. The end result is that Collins has the proceeds from the Kroll cattle, and Krolls have nothing. The trial court's implied findings are supported by the further testimony that the Krolls understood the cattle were being shipped to pasturage, but instead Collins promptly delivered them to the auction ring where they were sold. Bomar v. Insurors Indem. & Ins. Co., 150 Tex. 484, 242 S.W.

2d 160; Castro Coop. Gin Co. v. Harrison, supra; Tanner v. Jackson, Tex.Civ.App., 246 S.W.2d 319. While we do not pitch our decision upon the matter, Collins received and sold the cattle without a bill of sale in violation of Article 6903, Vernon's Tex. Civ.Stats., which was "prima facie illegal," and under Art. 1482, Penal Code, it was also a penal offense punishable by fine. In our opinion, the proof and inferences support the idea that Collins at the time the cattle were delivered to him in Frio County, intended to stop payment on the check, and that plaintiffs would not have allowed the cattle to leave their premises except upon reliance that Collins would pay for the cattle and not stop payment on the check.

■ The court sustained all the other pleas of privilege and the Krolls, as appellants, now argue that the other defendants should have been held in the suit in Frio County with Collins under Exception 29a, Art. 1995, supra. The plaintiffs were required to plead and prove that those other defendants are necessary parties. Ladner v. Reliance Corp., 156 Tex. 158, 293 S.W.2d 758, 763. They did not, of course, contract in writing under Section 5, nor did they convert any property in Frio County. Boyd in selling the cattle and the others in buying them, did so outside of Frio County. Though Collins, under our decision, may be held in Frio County because of his tort, the trial court correctly sustained the pleas of privilege of the other defendants whose conduct was independent of Collins' conduct in Frio County, and there was no concert or unity of design between them. Henderson Grain Co. v. Russ, 122 Tex. 620, 64 S.W.2d 347; Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W.2d 713; 89 C.J.S. Trover and Conversion § 93.

The judgment is affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the holding of the majority to the effect that the Krolls can maintain venue of this cause of action against

Ed W. Collins in Frio County under the provisions of Section 9, Article 1995, Vernon's Tex.Civ.Stats.

It is undisputed that Ed W. Collins has his domicile in Harris County, Texas. He timely filed a plea of privilege in proper legal form, seeking to have the cause of action transferred to Harris County. Article 1995, supra, provides that "No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases:" Then appear some thirty-two exceptions to this general rule, among which is Section 9. The right of an inhabitant of this State to be sued in the county of his residence is a valuable right and should not be taken away from him except upon a clear showing that venue lies in another county under one of the exceptions stated in Art. 1995, supra, or under some other provision of the statutes. Tyler Bank & Trust Co. v. Athens Commission Co., Tex.Civ.App., 301 S.W.2d 710.

In 43–B Tex.Jur., p. 127, § 15, the rule is stated as follows:

"The dominant purpose of the venue statutes is to give a person who has been sued the right to defend such suit in the county of his residence, except under the well defined exceptions, and the burden rests on the plaintiff to allege and prove that the case comes within these exceptions. The exceptions to the statute must be strictly construed and clearly established before a citizen can be deprived of his right to be sued in the county of his domicile. * * *"

The majority hold that venue of this cause lies in Frio County under Exception 9 of Article 1995, supra, in that Collins converted 125 cows and 100 calves in Frio County, and conversion of personal property is a trespass. There can be no question but that if Collins converted the cattle in Frio County, and the Krolls had *based* their suit upon this tort, under proper

pleadings and evidence, they could maintain venue in Frio County.

Let us see what the record shows. First, the Krolls *base their cause of action* upon a written contract allegedly performable in Frio County. They so allege in their petition and verify the same by their controverting affidavit. They insisted upon this matter at the hearing and undertook to maintain venue under Exception 5 of Art. 1995, supra. They still so insist in their brief filed here.

It is the law in this State that if a party has a cause of action based upon a contract or upon a tort, he must elect which remedy he will make the basis of his lawsuit, and if he elects to stand upon his contract he waives his right to stand on the tort, insofar as fixing venue is concerned. It is said in 43–B Tex.Jur., p. 185, § 47, in part as follows: "Where a person has an election to sue either on a contract or for a tort his election to sue on the contract waives the tort as a fact fixing the venue of his suit." Neal v. Barbee, Tex.Civ.App., 185 S.W. 1059. Exception 9 of Art. 1995, supra, provides that "A suit *based* upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, * * *." (Emphasis added.) It is plain that the conversion of the cattle in Frio County must be the basis of the Krolls' cause of action before they can maintain venue thereunder. The petition alleges that the cattle were delivered under the contract, and in my opinion does not allege any facts constituting conversion in Frio County. The controverting affidavit must be applicable or appropriate to the character of the suit alleged in the petition.

In 43–B Tex.Jur., p. 328, § 129, the rule is stated as follows:

"As a rule, it is necessary that the allegations of fact set forth in the sworn controverting plea conform to those stated in the petition, for such plea serves only to join the issue as to venue under the plea of privilege and the

petition on file, and it may not set up a new cause of action or one different from that sued on. A ground of venue stated in the controverting affidavit, which is foreign to the cause of action as declared in the petition, obviously will not defeat the plea of privilege. But reference will be had to the petition in order to determine the character of the action, and if in this respect there is a variance between the controverting plea and the petition, the latter will control."

What does the controverting affidavit show? It shows that the original petition was referred to, adopted, and the allegations therein verified. The Krolls filed an amended petition after they had filed their controverting affidavit, but they did not thereafter amend their controverting affidavit. Under such circumstances the amended petition is not before us. Vol. 1, McDonald, Texas Civil Practice, p. 451, § 4.50. Turning to the original petition, we find that it consists of two counts. The first count shows that the Krolls are basing their suit on their contract, and that in the alternative, and only in the alternative, they are in their second count seeking to recover the possession of 125 cows and 100 calves. The second count is also adopted and verified by the Krolls in their controverting affidavit, and if there is any contradiction between the two counts they could not well be verified. The basis of this suit is the contract, and only in the alternative do the Krolls seek to recover 125 cows and 100 calves. By suing upon their contract and seeking to maintain venue in Frio County upon this basis, they waived the right to maintain venue upon a tort action which was not pleaded. Miller v. Matthews, Tex.Civ.App., 176 S.W.2d 1011; 43–B Tex.Jur. p. 328, § 129.

If it can be said that the suit was for the recovery of 125 cows and 100 calves, then it would be governed by the provisions of Exception 10 of Article 1995, supra, providing that "Suit for the recovery of personal property may be brought in any county

where the property may be or where the defendant resides."

It is true that the controverting affidavit contains the following paragraph:

"Plaintiffs further aver that under Article 1995, Section 9 that venue shall be had in Frio County, Texas, because of the acts of the Defendant, Ed W. Collins, in removing said cattle from the Kroll Ranch in Dilley, Frio County, Texas, and by conversion of the said cattle to the use and benefit of him the said Ed W. Collins by means of false and deceitful pretenses and devises and fraudulent representation with intend to appropriate the cattle to use of him the said Ed W. Collins and thereby impairing the right of the Plaintiffs to possession of said cattle, the Plaintiffs being the parties justly entitled to such cattle until such cattle are paid for."

These allegations are not based upon the pleadings in existence at the time the controverting affidavit was filed, and is an attempt to maintain venue upon a cause of action not plead by the Krolls in their original petition. 43–B Tex.Jur. p. 328, § 129.

In Casebolt v. Waldron, Tex.Civ.App., 160 S.W.2d 309, the Court said:

"It is unnecessary to pass on these two questions since it clearly appears that the plaintiff's petition presents no cause of action based in whole or in part upon a fraud committed by the defendants, or either of them, against the plaintiff in Knox County. A ground of venue stated in the controverting affidavit which is foreign to the cause of action declared on in the petition obviously will not defeat the plea of privilege. A plaintiff's petition sets forth his right of recovery and he cannot in his controverting affidavit set up for the purpose of maintaining venue a new or different cause of action than that sued upon. Witting v. Towns, Tex.Civ.App., 265 S.W. 410; Sayeg v. Federal Mortg. Co., Tex.Civ.App., 16

S.W.2d 567; Demmer v. Lampasas Auto Co., Tex.Civ.App., 34 S.W.2d 421; Jones v. Caldwell, Tex.Civ.App., 42 S.W.2d 1052; Browne v. Heid Bros., Tex.Civ.App., 12 S.W.2d 587; Austin v. Grissom-Robertson Stores, Tex.Civ. App., 32 S.W.2d 205; Gholson v. Thompson, Tex.Civ.App., 298 S.W. 318; 43 Tex.Jur. 817, sec. 88; 20 Tex. Jur. 129, sec. 87 et seq.

"The cause alleged in the petition must control and 'The proof upon the issue of venue should be confined to the acts or omissions which are common to both controverting plea and the plaintiff's petition.' Austin v. Grissom-Robertson Stores, supra (32 S.W.2d 206). A controverting affidavit tenders only such issues as are made by the petition."

The allegations of conversion appearing for the first time in the Krolls' controverting affidavit, and not in their petition, cannot be considered in passing upon venue. See above authorities.

I am aware of the line of decisions cited in the majority opinion holding that under the provisions of Rules 67 and 90, T.R.C.P. failure to file demurrers or special exceptions to the controverting affidavit waives all defects in such pleadings. This is the holding in Burney v. Winfrey, Tex.Civ. App., 329 S.W.2d 136. I think a better rule was stated by Justice Smith in speaking for this Court in Evans v. Heldenfels, 70 S.W. 2d 283, 284, when he said:

"The practice of disposing of pleas of privilege and controverting pleas, by demurrer, is not commended, and often complicates the consideration and disposition thereof, without in any case being essential to the preservation of the rights of either party."

The majority opinion says: "The case was tried upon the conversion allegations without protest from the defendants other than a claimed failure of proof. * * * The absence of pleadings, therefore, is a point which the parties did not think suitable to preserve or brief, and the only way this Court could take cognizance of the point is to treat the matter as fundamental error and originate the point ourselves, which we refuse to do."

Appellant Collins' point on appeal is rather general, but the majority have treated it as a valid point and have given it consideration. The point reads as follows:

"The court erred in overruling the plea of privilege of the appellant Ed W. Collins for the reason that this appellant is entitled under the facts and law to have this suit tried in the county of his residence under Article 1995, Vernon's Revised Civil Statutes."

Under this point, Ed W. Collins states in his brief:

"The plaintiff failed to *plead* or *prove* that the appellant Collins committed a crime, offense, or trespass in Frio County or anywhere else for that matter. * * *

"The plaintiffs have failed to *allege* or prove any such case. As a matter of fact, the defendant Ed Collins was tried and acquitted of any crime, and the appellants Kroll and their attorney, Mr. Woodrow Curtis, had the case tried in Bexar County, alleging the purported crime took place in Bexar County, Texas." (Emphasis added.)

It occurs to me, that under our liberal rule as to the sufficiency of points made on appeal, that the question of the want of proper pleadings was raised.

As to the trial of the conversion issue by consent of the parties, let us see what the record shows. There were three separate pleas of privilege filed by different defendants, and three separate controverting affidavits filed by plaintiffs. The controverting affidavit to Ed Collins' plea of privilege was filed on March 2, 1959; the one to the plea of privilege of defendant Charles Boyd was filed on March 4, 1959; and the one to

the plea of privilege of defendant E. E. Henderson, on April 23, 1959. On March 24, 1959, plaintiffs filed their first amended petition which contained allegations of conversion of the 225 head of cattle by the giving of a check, and by selling the cattle on January 2, 1959, and retaining the proceeds from said cattle and refusing to pay either the plaintiffs or National Finance Credit Corporation for said cattle. Neither the giving of the check nor the selling of the cattle took place in Frio County, and therefore the above pleading cannot be regarded as alleging that the conversion took place in Frio County. The first amended petition cannot be considered with reference to the plea of privilege of either Collins or Boyd, as it was filed after their pleas had been controverted.

The trial court held a hearing on all three pleas of privilege at one and the same time. It occurs to me that by proceeding to trial in this joint hearing without protest, under the above pleadings, and failing to object to the evidence relating to conversion, if any, Ed W. Collins did not waive the lack of pleadings with reference to his own plea of privilege.

However, if it may be said that Ed W. Collins waived all objections to the deficiency in the pleading, there still is no evidence, in my opinion, to show that the cattle were converted in Frio County.

Both the pleadings and the proof show that by contract the Krolls sold to Ed W. Collins, 462 cows and their calves, to be delivered under the terms of said contract in Frio County, and that the cattle were delivered in five shipments. First, 125 cows and 48 calves were delivered. The Krolls received payment for these cattle, and they are not here involved. The second shipment was 24 dry cows, also fully paid for. The third shipment was 88 cows and 40 calves, satisfactorily paid for. The fourth shipment was made on December 30, 1958, and satisfactorily paid for. The fifth and last shipment was 125 cows and 100 calves, which were not paid for, and which are the cattle involved in this suit. Concerning this fifth shipment Cornelius Kroll, the father and one of the partners, testified in part as follows:

"Q. The next shipment of cattle would have been the fifth shipment, is that correct? A. The fifth and last shipment.

"Q. What date did that occur? A. That was December 31st.

"Q. How many cattle were shipped at that time? A. There were 125 cows and 100 calves by their side.

"Q. And how did Mr. Collins pay for those? A. They were paid with a check for approximately thirty-two thousand and some odd dollars.

"Q. Was that check given to you? A. No, that check was given to Lionel.

"Q. Were the cattle delivered to Mr. Collins on that date? A. Yes, sir.

"Q. The 225 head? A. Yes, sir.

"Q. How was the delivery effected to Mr. Collins? A. Well, they were picked up by the trucks of the Hutchison—Elmer Hutchison's trucks, that Mr. Collins had hired, at the ranch.

"Q. That is, at Divot? A. Yes.

"Q. Mr. Hutchison's trucks hauled the cattle from your ranch at Divot to Gurinsky's scales in San Antonio? A. At San Antonio.

"Q. Did the $32,355.00 check, was that delivered to you at the ranch? A. No, that was delivered to Lionel at San Antonio.

"Q. Were you there at the time? A. Not when it was delivered. I was at the ranch. I was in San Antonio later that evening.

"Q. You were there at the ranch at the time the cattle were delivered to his trucks, was that it? A. Yes, sir.

"Q. · Now, Mr. Kroll, this $32,000.00 check, was it sent to the finance company like the others? A. Yes, sir.

"Q. Then what happened to that check? A. It was turned down when it was presented.

"Q. You mean payment was stopped on the check? A. So the check indicated.

"Q. Did you see the check prior to the time it was sent to the National Finance Company? A. I endorsed the check to the National Finance Company.

"Q. That thirty-two thousand odd dollar check was payable to you? A. Yes, sir."

This evidence shows nothing more than that in keeping with the contract the cattle were delivered by Cornelius Kroll to Ed W. Collins in Frio County on December 21, 1958, and carried by trucks to the Gurinsky Scales in San Antonio, Texas, where they were weighed in the presence of Lionel Kroll, the other partner, and then paid for by a check in the sum of $32,351.33, on the Security State Bank of Navasota, Texas, which check was not paid by that bank because Collins stopped payment on it on January 9, 1959. The cattle were taken from Frio County with the consent of Cornelius Kroll, and therefore such taking could not constitute conversion in Frio County.

In Castro Cooperative Gin Co. v. Harrison, Tex.Civ.App., 272 S.W.2d 538, 541, the Court said:

· "The suit cannot be maintained in Haskell County under exception 9, that is, on the ground that the property was converted in Haskell County, if the owners of the bin and dropper consented to the taking thereof by appellants. 'Conversion involves a taking of property without the owner's consent; hence there can be no conversion where the owner has expressly or impliedly assented to the taking or disposition.'

42 Tex.Jur. 512. See also Terry v. Witherspoon, Tex.Civ.App., 255 S.W. 471, affirmed Tex.Com.App., 267 S.W. 973; Gulf, C. & S. F. R. Co. v. Pratt, Tex.Civ.App., 183 S.W. 103 (Writ Ref.). Likewise, appellants were not guilty of the fraud alleged and no cause of action therefor arose in Haskell County unless at the time appellants took possession they represented to appellees that they would pay therefor and then had no intention to pay."

In my opinion, there is no evidence in this record that Ed W. Collins did not intend to pay for the cattle at the time they were delivered to him. The evidence pointed out in the majority opinion as showing that the possession of the cattle was secured by fraud perpetrated upon Cornelius Kroll in Frio County at the time of the delivery of the cattle, creates nothing more than a suspicion, conjecture or surmise.

In Texas Employers' Ins. Ass'n v. West, Tex.Civ.App., 320 S.W.2d 55, 58, the Court said:

"It is established by the authorities that a breach or mere failure to perform the promise does not itself establish the absence of an intention to perform, at the time the promise was made. Federal Surety Company v. Blackwood, Tex.Civ.App., 46 S.W.2d 1062, no writ history; Davis v. Commercial Standard Ins. Co., Tex.Civ. App., 194 S.W.2d 599, n. r. e.; Miller Mfg. Co. v. Provine, Tex.Civ.App., 17 S.W.2d 128, no writ history; Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118; Boerner v. Cicero Smith Lumber Co., Tex.Com.App., 298 S.W. 545."

It would be just as logical to surmise that the reason Collins stopped payment on the check was because the mortgage Company refused to release its lien on the cattle, or that the Krolls refused to execute a written bill of sale to the cattle, or that the cattle were not as represented, as to conjecture that he did not intend to pay for the cattle when he received them in Frio County.

The right of Ed W. Collins to be sued in the county of his residence is a valuable right, and when he filed his plea of privilege in proper form he had a right to have the suit transferred to Harris County, the county of his domicile, unless the Krolls came forth with evidence clearly showing that the 225 head of cattle were not delivered under the terms of a written contract, as they swore was done in their controverting affidavit, but that Collins had obtained possession of the cattle by false and fraudulent pretenses made in Frio County, at the time the cattle were delivered to him. This they have totally failed to do.

I respectfully dissent to that part of the majority opinion holding that the trial court properly overruled the plea of privilege of Ed W. Collins.